ARCHER DANIELS MIDLAND COMPANY, Appellant, v. THE INDUS-
TRIAL COMMISSION *et al.* (Kenneth Brooks, Appellee).

Third District (Industrial Commission Division)   No. 3—87—0162WC

Opinion filed April 21, 1988.—Rehearing denied October 28, 1988.

James M. O'Brien and Sheila M. Lyons, both of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellant.

R. Wayne Harvey, of Harvey & Stuckel, Chartered, of Peoria, for appellee Kenneth Brooks.

PRESIDING JUSTICE BARRY delivered the opinion of the court:

Following an emergency hearing under section 19(b—1) of the Workers' Compensation Act (the Act) (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1)), the arbitrator found that the petitioner, Kenneth Brooks, was entitled to $307.94 per week for the 145⁶/₇ weeks he had been temporarily totally disabled as of the hearing date. Further, the arbitrator ordered the respondent, Archer Daniels Midland Company, to pay the petitioner $3,306.40 under section 19(k) of the Act and $948.86 in attorney fees under section 16 of the Act, as penalties for the respondent's "capricious" refusal to pay compensation.

On review, the Industrial Commission affirmed the arbitrator's award for temporary total disability. The Commission further awarded the petitioner $360 under section 19(l) of the Act for delay of payment between November 14, 1985, and December 20, 1985, and $1,080 for delay of payment between December 21, 1985, and April 8, 1986. Additionally, the Commission awarded the petitioner interest under section 19(n) of the Act. The Commission found that the respondent's conduct was not vexatious; thus, the petitioner was not entitled to additional compensation under section 19(k) or under section 16 of the Act.

The circuit court confirmed the Commission's decision. The respondent appeals.

The record shows that on March 31, 1983, the 48-year-old petitioner injured his back while working as a turbine operator for the respondent. The respondent's company doctor, Robert I. Martin, hospitalized the petitioner and referred the case to Dr. Jesse M. Weinger. Dr. Weinger injected the petitioner with chymopapain and performed a spinal fusion on him. By February of 1985, both doctors felt that the petitioner's condition had improved.

The respondent then arranged for rehabilitation counselor Ron Nemiroff to work with the petitioner. At the petitioner's request, and with Nemiroff's concurrence, the respondent paid for a Belsaw Institute locksmith correspondence course for the petitioner.

The petitioner received his first 10 locksmith lessons during the second week of May 1985. He submitted his first five lessons for grading on June 12, 1985, and the next five on July 19, 1985. He then submitted another five on September 26, 1985; another five on October 26, 1985; and the remaining 10 by December 20, 1985. Since December 20, he had been taking an advanced locksmith course.

In the meantime, counselor Nemiroff contacted the Belsaw Institute at the respondent's request. On August 5, 1985, Nemiroff re-

ceived a letter from Belsaw stating that the average time for completion of the locksmith course was six months. The respondent subsequently asked Nemiroff to learn from Belsaw how long it would take an individual to complete the course if he worked on it 40 hours a week. On September 9, 1985, Nemiroff received a letter from Belsaw stating that the petitioner should be able to complete the remaining 20 courses in two weeks if he worked on them 40 hours per week.

Nemiroff testified before the arbitrator that he never told the petitioner about the letters from Belsaw. Further, Nemiroff testified that he thought the petitioner was making satisfactory progress on the course.

On October 11, 1985, the respondent notified the petitioner's attorney by letter that it expected the petitioner to complete his locksmith training by October 31, 1985. The respondent's letter further stated that since the petitioner should be able to complete the program by October 31, he would not need weekly rehabilitation payments beyond that time. The respondent included with its letter a copy of Belsaw's September 9 letter.

On November 14, the respondent terminated temporary total disability benefits to the petitioner. The petitioner filed his section 19(b—1) petition for an emergency hearing on November 27, 1985. On December 12, 1985, the respondent filed a motion to dismiss the section 19(b—1) petition, contending primarily that the petitioner had not shown that he was unable to return to work. At the emergency hearing held on January 15 and 17, 1986, the arbitrator denied the respondent's motion to dismiss the petition.

The medical evidence presented at the hearing tended to show that the petitioner's condition was permanent. The doctors, including Dr. Marquardt, whom the respondent had hired to examine the petitioner in August 1985, agreed that the petitioner could perform only a limited amount of bending and stooping, could lift no more than 30 pounds and could not sit for extended periods. Dr. Martin felt that the petitioner could be employed as a locksmith. Drs. Martin and Weinger both testified that the petitioner was gainfully employable and that they were seeing him only to monitor his medication.

Other evidence regarding the petitioner's employability showed that the petitioner had an eighth-grade education and few transferable job skills. He had owned two bars at different times in the past. However, he testified that he was forced to sell the second of these bars after he and his first wife divorced. She had handled all of the business aspects of the bar. Without her assistance, he began losing money.

On September 11, 1985, Nemiroff had completed a labor market study involving the 11 locksmith shops in the Peoria area. He found that none of them needed any additional help. On October 10, 1985, Nemiroff performed another survey of the locksmith businesses, finding that none of them were seeking additional employees, but that three of them had hired new employees since July 1985. It appears from the evidence that the respondent did not inform the petitioner of Nemiroff's findings.

The petitioner testified that prior to the completion of his rehabilitation training he contacted locksmith businesses about employment. He did not provide any details regarding these contacts. He also admitted that after completing his locksmith course, he had not attempted to find any work as a locksmith or otherwise.

Mervin Mikkelson, a rehabilitation counselor with the Illinois Department of Occupational Rehabilitation Services, opined that the petitioner was potentially employable, but that he currently would have trouble finding a job as a locksmith or in any other field.

The respondent first argues on appeal that the petitioner's failure to seek employment after finishing his locksmith course entitled the respondent to terminate his temporary total disability benefits.

Temporary total disability benefits (TTD) are available only from the time an employee is injured until he has recovered as much as the character of his injury will permit. (*Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 413 N.E.2d 390.) Even where an employee's physical condition has stabilized, he may still be entitled to "maintenance" while he is in a prescribed rehabilitation program. (*National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672.) Such maintenance is often merely a continuation of TTD benefits. (See *Revere Copper & Brass, Inc. v. Industrial Comm'n* (1983), 97 Ill. 2d 388, 454 N.E.2d 657.) However, once the employee's physical condition has stabilized and he has completed a rehabilitation program which will enable him to resume employment without further training or education, neither TTD nor maintenance is appropriate. *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672.

In the instant case, the medical evidence tended to show that the petitioner had recovered as much as the character of his injury would permit. He had also completed his basic locksmith training program. While he testified that he was enrolled in an advanced locksmith course, there is no evidence in the record that it was needed to complete his rehabilitation or that the respondent had agreed that it would be a part of his rehabilitation program. Further, counselor

Mikkelson presented the only evidence that the petitioner might be unemployable. Counselor Nemiroff and Drs. Martin, Weinger and Marquardt appeared to believe that he was employable as a locksmith.

While the petitioner stated that prior to the completion of his training he contacted locksmiths, he provided no details about the dates, places, or outcome of those contacts. Further, he admitted that he had not contacted any locksmith about employment since October 25, 1985. Despite the evidence indicating that some of the area locksmith businesses employed only family members, Nemiroff's survey showing that three new employees had been hired between July and October of 1985 indicated that the possibility of employment for the petitioner existed.

Based on the facts in this case and the applicable law, we find that when the petitioner completed his basic locksmithing course, his physical condition had stabilized and he was able to resume employment without further training or education. Accordingly, we hold that the Commission's award of temporary total disability compensation after December 20, 1985, was against the manifest weight of the evidence.

■ The respondent's second argument on appeal is that the Commission's award of section 19(*l*) compensation for the period after December 20, 1985, was against the manifest weight of the evidence.

Section 19(*l*) of the Act provides for additional compensation payments to an employee as punishment to an employer who has unreasonably failed to pay all temporary total disability compensation due to the employee. Section 19(*l*) compensation is appropriate when the employer's conduct and reliance on medical opinion to contest liability is unreasonable under the circumstances presented. (*Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407, 456 N.E.2d 847.) This is a factual question for the Commission and its decision will not be overturned unless it is against the manifest weight of the evidence. *McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 437 N.E.2d 617.

Given our finding that the petitioner was not entitled to TTD after December 20, 1985, it follows that the respondent's failure to pay TTD benefits after December 20 was reasonable. We therefore find that the Commission's award of section 19(*l*) compensation for that time period was against the manifest weight of the evidence.

■ The respondent's third argument on appeal is that the petitioner failed to reasonably cooperate in his rehabilitation program, disqualifying him for TTD benefits after November 14, 1985.

We note that the specific issue of an employee's duty to cooperate

with a rehabilitation program appears to be one of first impression in Illinois. However, an analogous provision in the Act gives the Commission the discretion to reduce or suspend compensation either when a claimant persists in unsanitary or injurious practices which tend to imperil or retard his recovery, or when he refuses to submit to medical, surgical or hospital treatment which is reasonably essential to promote his recovery. (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(d); *Keystone Steel & Wire Co. v. Industrial Comm'n* (1978), 72 Ill. 2d 474, 381 N.E.2d 672.) Further, the Illinois Supreme Court held in *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 454 N.E.2d 672, that the Commission must set boundaries in a rehabilitation program which reasonably confine the employer's responsibility. Accordingly, we find that an employee participating in a rehabilitation program is required to reasonably cooperate in his rehabilitation. The issue of whether he is reasonably cooperating is, however, a question of fact and the conclusion of the Commission will not be disturbed unless it is contrary to the manifest weight of the evidence. See *Goldblatt Brothers, Inc. v. Industrial Comm'n* (1979), 78 Ill. 2d 62, 397 N.E.2d 1387.

In the instant case, there is evidence that the petitioner could have completed his locksmith course more quickly. There is other evidence, however, that the Belsaw Institute and counselor Nemiroff, who was hired by the respondent, believed the petitioner was making satisfactory progress. Further, there is no evidence that the respondent's expectations for course completion were communicated to the petitioner before October 11, 1985, when the respondent informed the petitioner that he had until October 31, 1985, to complete the course. We find that the Commission's ruling that the petitioner had completed his rehabilitation program within a reasonable time was not against the manifest weight of the evidence. Accordingly, the petitioner was eligible for maintenance, which may properly be set at the preceding TTD rate, through December 20, 1985.

■ The respondent's fourth argument on appeal is that the Commission's award of section 19(*l*) compensation for the period from November 14, 1985, through December 20, 1985, was against the manifest weight of the evidence.

Having already cited in our discussion of the second issue the legal standard applicable to this question, we turn to the instant facts. The respondent terminated TTD based upon its opinion that the petitioner should have completed his rehabilitation by November 14, 1985. It based this opinion on a letter from the Belsaw Institute stating that if the petitioner worked 40 hours per week on his course, he could complete it in two weeks. Though Nemiroff received this letter on

September 9, 1985, the respondent did not reveal it to the petitioner until October 11, when it gave him three weeks to finish the course. The medical evidence tended to show that the petitioner could not work 40 hours per week. Further, both counselor Nemiroff and the Belsaw Institute believed that the petitioner was making satisfactory progress. Based on the record in this case, the Commission's award of section 19(*l*) compensation for the period from November 14, 1985, through December 20, 1985, was not against the manifest weight of the evidence.

■ The respondent's fifth argument on appeal is that the arbitrator erred in denying its motion to dismiss the petitioner's section 19(b—1) petition for an emergency hearing. The decisions of the Commission and circuit court did not address this issue, although it was raised before them.

In its motion to dismiss, the respondent alleged that the petitioner had not complied with section 19(b—1)(x), which provides that the petitioner must include with his section 19(b—1) petition:

"[A] copy of a signed report by a medical practitioner, relating to the employee's current inability to return to work because of the injuries incurred as a result of the accident or such other documents or affidavits which show that the employee is entitled to receive compensation pursuant to paragraph (b) of Section 8 of this Act or medical, surgical or hospital services pursuant to paragraph (a) of Section 8 of this Act." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1)(x).

We note that the petitioner attached to his petition medical reports from Drs. Weinger and Martin setting forth the restrictions on his physical activities, including his inability to work in his former job. Further, the parties and the experts agreed following the petitioner's accident that he was unemployable in his old job and required rehabilitation in an occupation requiring minimal physical duties. The petitioner had not finished his rehabilitation course when the respondent terminated TTD payments, thus he could not have then been expected to find work as a locksmith. As we have found that the Commission properly ruled that the petitioner's efforts in completing his course were reasonable, it follows that the petitioner should not have been required to seek employment in other fields until he had completed the rehabilitation program supported by the respondent. Accordingly, we find that the petitioner sufficiently complied with section 19(b—1)(x) and the arbitrator properly denied the respondent's motion to dismiss.

■ The respondent's sixth argument on appeal is that the arbi-

trator erred in refusing to admit Dr. Marquardt's January 14, 1986, supplemental report.

Section 19(b—1) provides in part:

"No document or other evidence not previously identified by either party with the petition or written response, or by any other means before the hearing, may be introduced into evidence without good cause." Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1).

In the instant case, the petitioner introduced Dr. Marquardt's August 29, 1985, report as an admission against the respondent's interest. The respondent then sought to introduce into evidence Dr. Marquardt's January 14, 1986, supplemental report, in which he stated that the petitioner could not engage in repeated bending or lift more than 20 pounds. The petitioner objected, contending that the supplemental report was barred because it was hearsay and because the respondent had not attached it to its response to the petition for an emergency hearing. The arbitrator sustained the objection.

We find no need to determine whether the document was properly excluded. Dr. Martin had already stated that the petitioner could lift up to 30 pounds and could engage in some bending. Even the respondent admits that "admission of [the supplemental] report does not materially alter the evidence of record or even the medical evidence of record." Accordingly, given that the excluded evidence was cumulative, any error which might have occurred was harmless. *Gray Hill, Inc. v. Industrial Comm'n* (1986), 145 Ill. App. 3d 371, 495 N.E.2d 1030.

The petitioner raises two additional issues. We find, however, that they are barred by his failure to file a cross-appeal. *National Football League Properties, Inc. v. Dallas Cap & Emblem Manufacturing, Inc.* (1975), 26 Ill. App. 3d 820, 327 N.E.2d 247.

The judgment of the circuit court of Peoria County is reversed insofar as it confirms the Commission's finding that the petitioner was entitled to temporary total disability compensation and section 19(*l*) compensation after December 20, 1985. The remainder of the circuit court's judgment is affirmed.

Reversed in part; affirmed in part.

McNAMARA, WOODWARD, McCULLOUGH, and CALVO, JJ., concur.