(No. 67963.—

ARCHER DANIELS MIDLAND COMPANY, Appellee, v. THE INDUSTRIAL COMMISSION (Kenneth Brooks, Appellant).

*Opinion filed September 26, 1990.*

108

CALVO, J., took no part.

R. Wayne Harvey, of Harvey & Stuckel, Chtd., of Peoria, for appellant.

James M. O'Brien and William A. Morgan, of Pope, Ballard, Shepard & Fowle, Ltd., of Chicago, for appellee.

Asher, Pavalon, Gittler & Greenfield, Ltd., and Anesi, Ozmon, Lewin & Associates, Ltd., both of Chicago (Lester Asher, Arnold G. Rubin and Richard A. Kimnach, of counsel), for *amici curiae* Illinois Trial Lawyers Association and Illinois State Federation of Labor and Congress of Industrial Organizations.

JUSTICE WARD delivered the opinion of the court:

The appellant, Kenneth Brooks, appeals from a decision of the Appellate Court, Industrial Commission Division, affirming in part and reversing in part an arbitrator's award of temporary total disability (TTD) benefits and penalties after he was injured in the course of his employment by the appellee, the Archer Daniels Midland

Company (Midland). An arbitrator for the Industrial Commission found that Brooks was entitled to TTD benefits of $307.94 per week for a 145⁶/₇ week period. (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b).) The arbitrator also found Midland liable to Brooks for $3,306.40 under section 19(k) of the Act and $948.86 in attorney fees under section 16 of the Act, as penalties for Midland's "capricious" refusal to pay compensation. On review, the Industrial Commission affirmed the arbitrator's decision, but modified the penalties in the award. The circuit court of Peoria County confirmed the Industrial Commission's decision and the Appellate Court, Industrial Commission Division, reversed in part and affirmed in part. (174 Ill. App. 3d 918.) We granted the appellant's petition for leave to appeal pursuant to Rule 315 (107 Ill. 2d R. 315). *Amicus curiae* briefs were filed by the Illinois Trial Lawyers Association and the Illinois Federation of Labor and Congress of Industrial Organizations in support of Brooks.

The appellant sustained a lower back injury on March 31, 1983, after he slipped from a pipe and fell, landing on his back. At the time of the injury, Brooks, who had an eighth grade education, was 48 years old. The appellant was hospitalized by a company physician, Dr. Robert I. Martin, and was referred to an orthopedic surgeon, Dr. Jesse M. Weinger, for treatment. The appellant was also examined by a third doctor, Dr. E. Thomas Marquardt, an orthopedic surgeon.

Uncontested medical evidence showed that the appellant's accident caused an ongoing condition which prevents him from returning to his occupation as a turbine operator. The doctors examining Brooks agreed there are these physical limitations: (1) that he can perform only a limited amount of bending and stooping, (2) that he can lift no more than 30 pounds and (3) that he cannot sit for extended periods of time.

Midland requested that Brooks meet with a professional rehabilitation counselor, Ron Nemiroff, to discuss and determine a program of vocational rehabilitation consistent with his physical condition. After meeting, Brooks and Nemiroff agreed, based on his vocational testing and expression of interest, that Brooks would be enrolled, at Midland's expense, in a locksmithing correspondence course offered by the Belsaw Institute. Brooks began the course in late May 1985, and completed the course in December 1985. On October 11, 1985, Midland notified Brooks' counsel by letter that Midland expected Brooks to complete the course by October 31, 1985. Midland also stated that it expected Brooks to "devote his full time efforts" after completion of the course to "pursuing and obtaining employment in his chosen locksmith profession or to establishing his own self-employment business as a locksmith." Midland stated that Nemiroff was available to assist the appellant in pursuing employment.

Midland terminated benefits on November 14, 1985, because, it said, of Brooks' "lackadaisical" efforts to complete the course in a timely manner. On November 27, 1985, Brooks filed a petition under section 19(b—1) of the Workers' Compensation Act (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(b—1)) for an emergency hearing.

In January 1986, at an emergency hearing held to determine Brooks' right to continued benefits, an arbitrator found that Brooks' injury arose out of and was in the course of his employment. The arbitrator also found that the appellant's disabling condition had not yet reached a state of permanency and awarded TTD compensation of $307.94 per week for the 145$^{6}$/$_{7}$ week period between the date of his injury (March 31, 1983) and the date of the hearing (January 15, 1986). Midland had already paid and was granted credit for paying compensation for 137 weeks (March 31, 1983, through November 14, 1985).

Finding Midland's refusal to pay TTD benefits after November 14, 1985, was "capricious," the arbitrator ordered that Midland pay penalties in the amount of $3,306.40 under section 19(k) and $948.86 in attorney fees under section 16 of the Act (Ill. Rev. Stat. 1985, ch. 48, pars. 138.16, 138.19(k)).

On review, the Industrial Commission adopted the arbitrator's findings and affirmed the arbitrator's award except for those findings relating to the penalties and attorney fees. The Commission eliminated the penalties awarded under section 19(k) and the attorney fees awarded under section 16 because it found that Midland's conduct was not vexatious. The Commission did find, however, that Midland's termination of benefits on November 14, 1985, was unreasonable and that the appellant, therefore, was entitled under section 19(*l*) to additional compensation of $10 per day for delay in payment. Ill. Rev. Stat. 1985, ch. 48, par. 138.19(*l*).

Midland filed for review in the circuit court of Peoria County, contesting only the award of TTD benefits for the period between November 14, 1985, and January 15, 1986. The circuit court confirmed the Commission's finding and remanded to the arbitrator for further proceedings to reflect the Commission's findings. On Midland's appeal to the Appellate Court, Industrial Commission Division, the court affirmed the award of TTD benefits and section 19(*l*) penalties for the period between November 14, 1985, and December 20, 1985. It reversed the award of TTD benefits and section 19(*l*) penalties for the period between December 20, 1985, and January 15, 1986, holding that the Commission's award of TTD compensation after December 20, 1985, when the appellant completed his locksmithing course, was against the manifest weight of the evidence. (174 Ill. App. 3d at 923.) The appellate court stated:

"[W]hen the appellant completed his basic locksmithing course, his physical condition had stabilized and he was able to resume employment without further training or education. Accordingly, we hold that the Commission's award of temporary total disability compensation after December 20, 1985, was against the manifest weight of the evidence." 174 Ill. App. 3d at 923.

The questions on appeal are: whether the appellate court erred in judging that the Industrial Commission's award of TTD benefits between December 20, 1985, and January 15, 1986, was against the manifest weight of the evidence; whether Midland is correct in contending that the appellate court erred in not reversing the Commission's award of TTD benefits for the period between November 15, 1985, and December 20, 1985.

We consider first Midland's claim that the appellate court erred in not holding improper the Industrial Commission's award of TTD benefits after November 14, 1985. Midland does not dispute the fact that the appellant sustained a compensable injury or that he is now incapable of working as a turbine operator. Midland states, however, that it was justified in terminating the benefits it was paying to Brooks because of his "lackadaisical" progress in completing the locksmithing course. Midland argues that Brooks failed to cooperate in his rehabilitation because he did not make a reasonable attempt to complete the program in a timely manner. Vocational rehabilitation is directed by section 8(a), which states, "The employer shall also pay for *** instruction and training necessary for the *** vocational rehabilitation of the employee, including all maintenance costs and expenses incidental thereto." Ill. Rev. Stat. 1985, ch. 48, par. 138.8(a).

It is true that in attempting rehabilitation of the injured employee there are "boundaries which reasonably confine the employer's responsibility," including a re-

quirement that the claimant make good-faith efforts to cooperate in the rehabilitation effort. (*National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424, 433.) Under the circumstances here, however, we hold that the employer was not justified in terminating the appellant's benefits based on the claimed failure to cooperate.

The record shows that it took Brooks almost seven months to complete the locksmithing course. The locksmithing course consisted of 30 lessons, each of which, according to the testimony of George Doetzl, a Belsaw Institute instructor, should require about two hours to complete. Doetzl testified that the average time for completion of the course was six months but this six-month completion time was estimated for those students on the "pay as you go" plan, which restricted the number of lessons a student could complete in a month. Midland, however, had prepaid for Brooks' course. Brooks was free to complete as many lessons as he could in a month. Arguably he could have completed the course in a shorter time, but the record also establishes that it was not until August 1985 that Brooks' physical condition began to improve. Prior to that time, Brooks had frequent treatments and complained of considerable pain. Also, the record reveals that Brooks was not notified until the letter of October 11 that Midland considered his progress was not satisfactory or that he was expected by Midland to complete the course by October 31. Nemiroff and the Belsaw Institute representative each testified that he believed the appellant's progress was satisfactory. Nemiroff also testified that he felt Brooks had cooperated in his rehabilitation program. Too, the October 11 letter stated that Midland expected that Brooks could complete the remaining lessons by the specified date if he worked on them 40 hours a week. Brooks' physician, however, had testified that he could work on the school-type lessons for 20 to 25 hours a week. Despite the

claimed delay in completion of the course, the record supports the conclusion that there was no failure to cooperate on Brooks' part and that Midland's termination of benefits based on the failure to cooperate was not justified. We, therefore, reject Midland's contention that the appellate court erred in upholding the Commission's award of TTD benefits beyond November 15, 1985.

There is also a suggestion by an *amicus curiae* that the rehabilitation program here was not appropriate given the lack of prospective employment for locksmiths. An employer cannot meet its rehabilitation obligations simply by providing a correspondence course in an industry of questionable opportunity, and a vocational rehabilitation course can hardly be appropriate where there is no likelihood of employment in the industry upon completion of the course. (See *National Tea Co. v. Industrial Comm'n* (1983), 97 Ill. 2d 424; *Hunter Corp. v. Industrial Comm'n* (1981), 86 Ill. 2d 489; *Howlett's Tree Service v. Industrial Comm'n* (1987), 160 Ill. App. 3d 190.) The question will not, however, be considered here, as the parties never raised the issue. Here, a prescribed rehabilitation program existed, both parties had agreed to the locksmithing program and the appellant's doctors and counselors agreed that the program was consistent with Brooks' physical and educational limitations. The only issue before us is whether the employer was justified in terminating benefits based on the appellant's failure to cooperate in the chosen rehabilitation course, which we have already stated it was not.

Midland argues that even if termination of benefits was not justified by a lack of cooperation, Brooks was not entitled to TTD benefits because after he completed the locksmithing course he was no longer temporarily totally incapacitated. Midland argues that Brooks' condition had stabilized, that he had been rehabilitated and

that he was qualified for and capable of obtaining gainful employment as a locksmith.

Brooks responds, however, that his condition had not stabilized and that he was unable to work for the entire period involved, which made him eligible for TTD benefits for the full 145⁶/₇ week period. As support for his conclusion, he argues that he was still under doctors' care, that there was no evidence he had been released for full time employment by his doctors, and that he could perform only work subject to substantial physical limitations.

An employee is totally disabled when he cannot perform any service except those for which no reasonably stable labor market exists. (*Ceco Corp. v. Industrial Comm'n* (1983), 95 Ill. 2d 278, 286; *Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 176.) TTD compensation is provided for in section 8(b) of the Workers' Compensation Act. Section 8(b) provides, "[W]eekly compensation *** shall be paid *** as long as the total temporary incapacity lasts." (Ill. Rev. Stat. 1985, ch. 48, par. 138.8(b).) This court has held that an employee is temporarily totally incapacitated from the time an injury incapacitates him for work until such time as he is as far recovered or restored as the permanent character of his injury will permit. (*McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198, 209; *Brinkmann v. Industrial Comm'n* (1980), 82 Ill. 2d 462, 467; *Health & Hospitals Governing Comm'n v. Industrial Comm'n* (1978), 72 Ill. 2d 263, 273-74.) Once an injured employee's physical condition stabilizes, he is no longer eligible for TTD benefits, although he may be entitled to permanent partial total disability compensation under section 8(d) or permanent total disability compensation under section 8(f) (Ill. Rev. Stat. 1985, ch. 48, pars. 138.8(d), (f)).

The time during which a worker is temporarily totally disabled presents a question of fact to be determined by

the Industrial Commission, and the Commission's decision will not be disturbed unless it is against the manifest weight of the evidence. *Zenith Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 278, 285; *Brinkmann v. Industrial Comm'n*, 82 Ill. 2d at 467.

Here, the Industrial Commission, following the arbitrator's report, found that the appellant's condition had not yet reached a state of permanency and awarded the appellant 145⁶/₇ weeks of TTD benefits. Although the Industrial Commission made no express determination as to whether the doctors expected the appellant's condition to improve, there is evidence in the record to support the Industrial Commission's finding that his condition had not yet reached a state or condition of permanency. The arbitrator had considered extensive medical testimony which suggested that Brooks had substantial physical limitations, that he had not yet been released from either Dr. Martin's or Dr. Weinger's care, that he was still taking prescribed medication and that he had future medical appointments with both doctors. Based on this evidence, the Industrial Commission could reasonably have inferred that the appellant's condition had not yet reached a state of permanency. As we stated previously, all factual issues are for the Industrial Commission and we will not disturb its findings, unless they are contrary to the manifest weight of the evidence. This court will not reject reasonable inferences of the Commission merely because we might have drawn a contrary inference on the particular facts. (*Revere Copper & Brass, Inc. v. Industrial Comm'n* (1983), 97 Ill. 2d 388, 394.) The record shows that the Commission's finding was not contrary to the manifest weight of the evidence.

Midland further argues that the Commission's conclusion was erroneous because in proving that TTD benefits are appropriate, the claimant must show not only that he did not work, but that he was unable to work. (*Health &*

*Hospitals Governing Comm'n v. Industrial Comm'n* (1978), 72 Ill. 2d 263, 274; *Arbuckle v. Industrial Comm'n* (1965), 32 Ill. 2d 581, 586.) There is no dispute here that Brooks' physical condition had rendered him incapable of returning to his former occupation as a turbine operator. Midland argues, however, that after Brooks completed the locksmithing course, he was gainfully employable. There is also evidence in the record that appellant's doctors stated that Brooks is capable of "light-duty" work, including locksmithing, so long as that work was compatible with the physical limitations placed on him by the doctors. Midland argues that because Brooks had completed the locksmithing course and was released for light-duty work by his doctors, he was qualified to be employed in the locksmithing industry. Because he failed to make any attempt to find employment after completion of the course, Midland says, he did not show that he was unable to work and he was, therefore, not entitled to TTD payments after December 20, 1985.

Midland's argument here is not over whether the appellant's condition has stabilized and is therefore temporary, as opposed to permanent, rather it is whether the appellant is still totally disabled. This court in *E.R. Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353, held, in determining whether a claimant was entitled to total and permanent disability benefits under section 8(f), that an employee does not have to be reduced to a state of total physical and mental incapacity or helplessness before total disability compensation can be awarded.

If the claimant's disability is limited in nature so that he is not obviously unemployable or if there is no medical evidence to support a claim of total disability, the burden is upon the claimant to establish the unavailability of employment to a person in his circumstance. (See

*Valley Mould & Iron Co. v. Industrial Comm'n* (1981),
84 Ill. 2d 538, 546-47.) Once a claimant shows that he is
unable to perform and obtain regular and continuous em-
ployment for which he is qualified, the burden shifts to
the employer, who must come forward with evidence to
establish "that the employee is capable of engaging in
some type of regular and continuous employment" and
that "such employment is reasonably available." *E.R.
Moore Co. v. Industrial Comm'n* (1978), 71 Ill. 2d 353,
362.

After completion of the rehabilitation course, Brooks
was arguably able and qualified to be a locksmith. The
doctors all agreed that locksmithing is a suitable activity
for Brooks and that Brooks would be gainfully employ-
able if the job proposed would be compatible with the re-
strictions imposed on his activity. It is plain, however,
that the mere fact that one may be able to generate
some income through an activity does not of itself per-
mit a conclusion that one is employable or can support
oneself by that activity. (*Hunter Corp. v. Industrial
Comm'n* (1981), 86 Ill. 2d at 497.) In *J.M. Jones Co. v.
Industrial Comm'n* (1978), 71 Ill. 2d 368, 373, for exam-
ple, this court held that evidence that the employee has
been or is able to earn occasional wages or perform cer-
tain useful services does not preclude a finding of total
disability. In *J.M. Jones*, the fact that the claimant could
drive a school bus did not require reversal of the Com-
mission's finding that he was temporarily totally dis-
abled. Also, in *Ford Motor Co. v. Industrial Comm'n*
(1984), 126 Ill. App. 3d 739, 743, the court held that the
ability to do light work did not preclude a finding of
temporary total disability.

According to the record, although Brooks cannot re-
turn to his job as a turbine operator, his doctors have
stated that he is capable of gainful "light-duty" employ-
ment, including locksmithing. Brooks' condition is, there-

fore, not so limited in nature that he is obviously unemployable. Brooks, therefore, has the burden of establishing the unavailability of employment to a person in his circumstance. This court has held that diligent, but unsuccessful, attempts to find employment will satisfy this burden. (*Interlake, Inc. v. Industrial Comm'n* (1981), 86 Ill. 2d 168, 178.) It seems clear that Brooks made no attempt to secure employment after he completed his correspondence course. Although Brooks admitted that he did not attempt to find work after he completed the course, he testified that just prior to completion of the course he contacted several possible employers who informed him that no locksmithing jobs were available. The rehabilitation counselor also testified, based on particularized market studies and personal knowledge of the labor market, that no jobs were available in the area for the appellant. This evidence was clearly sufficient to satisfy the appellant's burden. The burden, therefore, shifted to the employer to prove that the employee was capable of engaging in some type of regular and continuous employment and that such employment was reasonably available. The employer here proved nothing more than that it had provided the appellant with a locksmithing correspondence course. As the arbitrator suggested, Midland did not offer Brooks any appropriate light work and made no showing that other suitable light work, including locksmithing, was available for him. See *Boker v. Industrial Comm'n* (1986), 141 Ill. App. 3d 51, 55 (where the court held that TTD benefits were properly cut off because the claimant's employer had offered the claimant a light-duty job consistent with his physical limitations, but the claimant refused the job).

Because the record supports the Industrial Commission's finding that Brooks' condition had not stabilized and that he was still totally disabled, the appellate court erred in holding that the Industrial Commission's deci-

sion regarding the award of TTD benefits after December 20, 1985, was against the manifest weight of the evidence.

The Commission also awarded Brooks compensation under section 19(*l*) of the Workers' Compensation Act. Section 19(*l*) provides for additional compensation when an employer has unreasonably failed to pay all the disability compensation due to the employee. (Ill. Rev. Stat. 1985, ch. 48, par. 138.19(*l*).) The appropriateness of imposing section 19(*l*) penalties and the amount to be awarded thereunder is a question of fact for the Commission, and its decision will not be overturned unless it is against the manifest weight of the evidence. (*Continental Distributing Co. v. Industrial Comm'n* (1983), 98 Ill. 2d 407; *McKay Plating Co. v. Industrial Comm'n* (1982), 91 Ill. 2d 198.) Given the fact that we find the Industrial Commission's decision regarding payment of benefits through January 15, 1986, appropriate, we find that its imposition of section 19(*l*) penalties is not against the manifest weight of the evidence.

For the reasons stated, the judgment of the appellate court is affirmed in part and reversed in part, and the judgment of the circuit court, confirming the award of the Industrial Commission, is affirmed.

*Appellate court judgment affirmed*
*in part and reversed in part;*
*circuit court affirmed.*

JUSTICE CALVO took no part in the consideration or decision of this case.