DANIEL STONE, Appellant, v. THE INDUSTRIAL COMMISSION *et al.* (R. Olson Construction Company, Appellee).

Second District    No. 2—96—0052WC

Opinion filed January 10, 1997.

John J. Castaneda and Michelle D. Porro, both of Presbrey & Associates, P.C., of Aurora, for appellant.

Laurence C. Cassano, of Ritter & Cassano, of Chicago, for appellee.

JUSTICE RAKOWSKI delivered the opinion of the court:

Claimant, Daniel Stone, filed an application for adjustment of claim pursuant to the Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 1994)) for injuries to his low back that he sustained on April 2, 1990, while working for R. Olson Construction Company (employer). The arbitrator awarded claimant temporary total disability (TTD) of $433.95 for 219$^4$/$_7$ weeks through January 20, 1994, terminating benefits because it found claimant failed to reasonably cooperate with rehabilitation. The Industrial Commission (the Com-

mission) upheld the January 20, 1994, termination and, noting a miscalculation, modified TTD to $320.42 for $179^4/7$ weeks. The circuit court of Kane County confirmed. Claimant appeals, contending that (1) the Commission erred in finding he failed to reasonably cooperate with vocational rehabilitation and (2) the Commission erred in allowing employer to terminate his benefits because termination was based on his religion and violated his right to freely exercise that religion. We affirm.

## FACTS

Claimant injured his low back on April 2, 1990. He sought treatment from various physicians and, in June 1992, underwent surgery. He was released to work on March 9, 1993, with lifting restrictions, but did not return to work until July 6, 1993. Although claimant was given work within his restrictions and he does not contend otherwise, he quit on August 17, 1993, because his duties still caused him pain. During this July 6 to August 17 period, claimant only worked eight days.

Claimant testified that since the summer of 1993 he had looked for work on his own and had contacted 14 to 15 employers. He had a tenth-grade education, did not have a GED, and possessed no special skills or training. Six months prior to the accident, claimant became active in the World Wide Church of God, which restricted him from working certain holy days and Saturdays.

On October 22, 1993, employer referred claimant to James Boyd, a vocational rehabilitation specialist, to secure alternative employment. Boyd met with claimant on at least two occasions. He gathered claimant's background information, conducted aptitude tests to evaluate claimant's skills, and explained his role to claimant. On each occasion, Boyd advised claimant to obtain his GED. He also directed claimant to the library and recommended two resource books to assist claimant with determining some vocational interests. During the second meeting, Boyd assisted claimant in filling out a sample master application which he told claimant to bring to future interviews. Boyd worked with claimant on basic job skills, including how to dress, how to answer questions, and how to present himself in general. Finally, Boyd provided claimant with prospective employer contact sheets and referred him to Michelle Farmer, a job placement specialist, to assist him in scheduling interviews. According to Boyd, claimant presented himself in a dirty and unshaven manner and had dirty clothes, greasy hair, and body odor. Boyd found it difficult to establish a rapport with claimant as "[he] present[ed] himself in a very unresponsive manner" with a "very flat affect and respond[ed] to all questions with a minimum of information."

In discussing vocational interests with Boyd, claimant only expressed an interest in being a game or fish warden and had given no thoughts to other options. Even after Boyd advised claimant of his skills based on the test results, claimant persisted in seeking a game or fish warden position. Claimant informed Boyd at each meeting he had not pursued measures to obtain his GED and had not visited the library. Claimant failed to tell Boyd he had a prior criminal conviction and failed to discuss his religion and its work restrictions.

Boyd scheduled an interview for claimant on January 5, 1994. However, when Boyd telephoned claimant, claimant told Boyd he needed 48 hours' notice before any interview. Boyd rescheduled the interview to January 10, 1994.

Farmer met claimant prior to the interview. He was unshaven, dirty, and inappropriately dressed. He failed to bring his master application, as Boyd had requested, and Farmer had to assist him in filling out the application. During this time, claimant told Farmer he had been convicted of a felony.

Claimant began the interview, but within 5 to 10 minutes, it was terminated. He advised the prospective employer that, due to his religion, he was unable to work on Saturdays. The position he was interviewing for mandated Saturday work.

Subsequent to the interview, Boyd spoke with claimant, who stated he had still done nothing to obtain his GED and had not researched other interests. Claimant also told Boyd he had not contacted any other employers. They discussed claimant's religion for the first time.

Boyd authored a report on January 20, 1994, in which he detailed the events that had transpired since he began counseling claimant and stated claimant gave no indication he was interested in further rehabilitative services. Based on the report, employer terminated TTD benefits as of that date.

## ANALYSIS

### I. REASONABLE COOPERATION

Claimant first contends the Commission erred in terminating TTD benefits as of January 20, 1994. According to claimant, there was no basis for finding he failed to cooperate reasonably with rehabilitation efforts.

■ The law on reasonable cooperation is scant. Three reported decisions have addressed the issue. In *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107 (1990), the Illinois Supreme Court set forth the duty: "in attempting rehabilitation of the injured employee there are 'boundaries which reasonably confine the employer's

responsibility,' including a requirement that the claimant make good-faith efforts to cooperate in the rehabilitation effort." *Archer Daniels Midland Co.*, 138 Ill. 2d at 115-16, quoting *National Tea Co. v. Industrial Comm'n*, 97 Ill. 2d 424, 433 (1983).

In *Archer Daniels Midland Co.*, the employer had paid for claimant's enrollment in a correspondence locksmithing course, which claimant began in May 1985. Claimant's physician permitted him to work on the course 20 to 25 hours per week. On October 11, 1985, employer informed claimant he must complete the course by October 31, 1985. It advised him he could fulfil the coursework by that deadline if he worked 40 hours per week. Claimant completed the course in seven months, which was one month later than the average. Employer terminated benefits on the basis of claimant's failure to cooperate reasonably with rehabilitation. The arbitrator found the termination "capricious" and the Commission affirmed. On appeal, the Illinois Supreme Court held that the Commission's decision was not against the manifest weight of the evidence based on the facts present. The court outlined the above facts and noted that, although claimant could have completed the course by employer's deadline, it would have required him to work more hours than permitted by his physician. Further, claimant's rehabilitation counselor had testified that claimant cooperated with him and with the rehabilitation program.

In *Jewel Food Cos. v. Industrial Comm'n*, 256 Ill. App. 3d 525 (1993), we found that the Commission's decision that claimant sufficiently cooperated with rehabilitation was not against the manifest weight of the evidence. Although claimant expressed an interest only in returning to employer or a trucking position and stated "he was not going to cooperate with [rehabilitation] any further" (*Jewel Food Cos.*, 256 Ill. App. 3d at 530), he had contacted 25 employers on his own as well as some of the employers provided by his counselor. He advised his counselor he could not meet his financial obligations if he accepted a position paying $4 per hour and that he desired a position paying a wage similar to the one he was making prior to the accident. Claimant obtained a full return to work release, listed his name with employer, and contacted its personnel department. Finally, shortly after rehabilitation began, claimant made a concerted effort to return to work for employer but was unable to due to pain.

In *Hayden v. Industrial Comm'n*, 214 Ill. App. 3d 749 (1991), we reiterated the test set forth in *Archer Daniels Midland Co.* and held that the Commission's decision that claimant had failed to cooperate reasonably was not against the manifest weight of the evidence. Claimant expressed no interest in several positions for which he was

qualified and which conformed to his doctor's restrictions. One of the positions paid a salary comparable to the welding positions that claimant desired. At the time of his hearing, claimant had not secured a job and was not enrolled in school.

■ The determination of whether claimant is entitled to TTD benefits and for how long is a question of fact to be determined by the Commission. *Jewel Food Cos.*, 256 Ill. App. 3d at 531. Likewise, the specific question of whether claimant reasonably cooperated with rehabilitation efforts is generally a question of fact. We will not reverse the Commission's decision on this issue unless it is against the manifest weight of the evidence. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118-19. " 'The manifest weight of the evidence is that which is "the clearly evident, plain and indisputable weight of the evidence." [Citations.] In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent.' " *Drogos v. Village of Bensenville*, 100 Ill. App. 3d 48, 54 (1981), quoting *In re Application of County Collector*, 59 Ill. App. 3d 494, 499 (1978). "It is well settled that if undisputed facts upon any issue permit more than one reasonable inference, the determination of such issues presents a question of fact, and the conclusion of the Commission will not be disturbed on review unless it is contrary to the manifest weight of the evidence." *Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 60 (1989).

■ After a careful review of the facts, we conclude that the Commission's decision to terminate claimant's TTD benefits as of January 20, 1994, because he failed to cooperate reasonably with rehabilitation is not against the manifest weight of the evidence. Over the three-month period claimant received rehabilitative counseling, he failed to take any steps to obtain his GED and he failed to visit the library to research vocational interests, despite directions to do both. According to Boyd, claimant failed to "give any indication whatsoever that he was interested in vocational rehabilitation services." Claimant also forced an interview to be rescheduled because he was not given 48 hours' notice. When claimant did appear for the interview, he was unshaven and dirty and had failed to dress properly. Boyd had specifically told claimant how to dress and appear; nonetheless, claimant ignored this advice. In rendering its decision, the Commission relied on all of these reasons. We also note that, although claimant was released to work on March 3, 1993, he failed to return to work until July 6, 1993. When he did return, he worked for only eight days.

From these facts, the Commission could reasonably infer that claimant was malingering and not sincere in his efforts at rehabilita-

tion. Although an opposite conclusion may also be inferred, we cannot say that such an opposite conclusion is clearly apparent. The question is one of fact and within the province of the Commission. We cannot say that the Commission's decision is against the manifest weight of the evidence.

## II. VIOLATION OF RIGHT TO FREE EXERCISE OF RELIGION

Claimant next contends that his right to freely exercise his religion was violated. He contends:

> "The Defendant terminated the Plaintiff's maintenance payments because a potential employer terminated a job interview upon learning that Petitioner's religion prohibited him from working on Saturdays. Both the actions of the potential employer in terminating the interview, and the actions of the Defendant in terminating Plaintiff's maintenance payments violate the Free Exercise Clause of both the Federal Constitution and the State Constitution."

■ This argument is without merit. The only reference the arbitrator made to claimant's religion was an allusion to Boyd's comments in his January 20, 1994, report that claimant's religious observations had not previously been discussed and were "inappropriately dealt with in his recent job interview." This reference was incorporated in the arbitrator's recitation of the facts. The arbitrator then outlined at least six factors on which he found claimant failed to cooperate reasonably with rehabilitation. None of these reasons included a reference to claimant's religion or even implied that the arbitrator considered claimant's religion in rendering his decision. We therefore find claimant's argument that religion was a factor to be unsupported by the evidence.

## CONCLUSION

For the foregoing reasons, the decision of the circuit court of Kane County is affirmed.

Affirmed.

McCULLOUGH, P.J., and COLWELL, HOLDRIDGE, and RARICK, JJ., concur.