ABSOLUTE CLEANING/SVMBL, Appellant, v. ILLINOIS WORKERS' COMPENSATION COMMISSION et al. (Suanne Palazzolo, Appellee).

Fourth District (Workers' Compensation Commission Division)
No. 4—10—0313WC

Argued April 13, 2011.—Opinion filed April 28, 2011.

Theodore J. Powers (argued) and Jeffrey N. Powell, both of Rusin, Maciorowski & Friedman, Ltd., of Chicago, for appellant.

John V. Boshardy (argued), of John V. Boshardy & Associates, P.C., of Springfield, for appellee.

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.

Presiding Justice McCullough and Justices Holdridge, Hudson, and Stewart concurred in the judgment and the opinion.

## OPINION

Absolute Cleaning/SVMBL (Absolute) appeals from an order of the circuit court of Sangamon County which confirmed a decision of the Illinois Workers' Compensation Commission (Commission), finding that its employee, Suanne Palazzolo (claimant), sustained work-related injuries on May 9, 2006, and November 6, 2006, which arose out of and in the course of her employment and awarding the claimant benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2004)). For the reasons that follow, we affirm the judgment of the circuit court and remand this cause to the Commission.

The following factual recitation is taken from the evidence presented at the arbitration hearing on the claimant's petition for adjustment of claim.

The claimant, a worker for Absolute's cleaning business, testified that, on May 9, 2006, while lifting a mop bucket during her cleaning duties, she experienced a sharp pain in her neck and lower back shooting into her arm and left leg. She testified that, years before that accident, she had sought treatment for neck or back problems but that those problems did not persist until the time of her May 2006 accident.

After the May 2006 accident, the claimant sought treatment from a chiropractor, Dr. Kelly Calloway, but returned to work without restrictions after missing less than one week. The claimant testified that she discontinued chiropractic treatment soon after the accident,

and in fact sought no other medical treatment before her next work accident, on November 6, 2006. She testified that, on November 6, she was lifting a trash bag when she felt "the same feeling all over again," this time in her back and neck, and "going down the right arm and *** wrapping around the shoulder blade." After that incident, the claimant returned to Dr. Calloway. The claimant testified that she continued her chiropractic care from that point until the day of the hearing, and that the care helped to relieve her symptoms.

In her testimony, the claimant stated that Dr. Calloway referred her to Dr. Ronald Hertel "under [the claimant's] wishes." The claimant said that Dr. Hertel's name was given to her by her former attorney. The claimant later clarified that Dr. Calloway told her that she needed to see another doctor and that she could "choose a doctor that [Dr. Calloway] could refer [her] out to." In his December 28, 2006, note, Dr. Hertel wrote that he saw the claimant because she "was referred by her attorney *** for evaluation." The claimant disputed that characterization in her testimony. The claimant's medical records include a note, written by Dr. Calloway and dated December 8, 2006, saying, "I would like to refer [the claimant] to *** Dr. Ronald Hertel *** because I suspect a cervical disc problem."

In the patient history included in his December 28, 2006, treatment note, Dr. Hertel observed that the claimant had reported low-back pain after her first work incident but returned to work shortly thereafter and continued to work until the November 6, 2006, incident. Dr. Hertel wrote that, following that incident, the claimant experienced pain in her upper arms, her legs, and low back and problems with her neck. Dr. Hertel's physical examination revealed to him that the claimant's "symptoms [were] far in excess of that which [could] be substantiated on any objective physical finding." He recommended an MRI of the claimant's spine, but, according to the claimant's testimony, he did not do so until her attorney called the doctor after her appointment to request the recommendation. He also noted that, at the end of his examination, he and the claimant had an argument that led him to conclude that he should not schedule another appointment with her. A record of the January 19, 2007, MRI the claimant later underwent includes the impression that she suffered from mild disc protrusion at L3-L4, annular tear at L4-L5, left paracentral/left lateral disc prolapse at C5-C6, left paracentral disc protrusion at C4-C5, posterior central disc protrusion at C6-C7, and degenerative disc disease at L3-L4, L4-L5, and C5-C6.

In her testimony, the claimant said that she also saw her family doctor, Dr. Chris Sprinkel, because Dr. Calloway "told [her] that [she] would have to go to see him to get pain medicine." On cross-

examination, the claimant clarified that Dr. Calloway did not give her a written referral to see Dr. Sprinkel but instead "just advised" her to see him if she wanted pain medication.

The claimant recalled that Dr. Sprinkel prescribed pain medication but told her that she needed to see a specialist and that she should arrange the referral through Dr. Calloway. Dr. Sprinkel's December 11, 2006, treatment note states that the claimant "[s]hould follow-up with the back specialist."

The claimant explained that Dr. Calloway first recommended that she see a Dr. Freytag but that Calloway "gave [her] the choice and [she] heard that Dr. Pencek was better." On cross-examination, the claimant stated that she saw Dr. Terrence Pencek via a referral from Dr. Calloway. On further questioning, she clarified: "I was allowed to choose my own doctor and I chose Dr. Pencek and [Dr. Calloway] referred me out to him. She gave [me] the choice of who I would like to see." The record on appeal contains a note, dated February 20, 2007, in which Dr. Calloway refers the claimant to Dr. Freytag.

In her January 21, 2007, report of an examination of the claimant undertaken at Absolute's request, Dr. Sandra Tate noted tenderness in the claimant's upper trapezius muscles and left posterior superior iliac spine, and she noted from MRI reports that the claimant had "degenerative disc changes in the cervical spine at C5-6 and C6-7 with a left paracentral protrusion at L4-5." Dr. Tate opined that "the patient's left sacroiliac joint dysfunction may be causally related to the November 2006 injury," while the claimant's neck and back problems "were, at most, exacerbated but not caused by the May 2006 injury." Dr. Tate indicated that the claimant could work with restrictions and might benefit from additional treatment or physical therapy.

In a March 12, 2007, treatment note, Dr. Pencek wrote that he was seeing the claimant after a referral from her chiropractor—an assertion he repeated in his deposition—and that the claimant told him that her consultation with Dr. Hertel was at her request. Pencek noted tenderness over the claimant's left trapezius and left posterior neck, noted that the claimant reported left leg and low-back pain, and indicated that the claimant had disc herniations on the left side of the C5-C6 and C4-C5 levels. Pencek recommended physical therapy and epidural injections, and he wrote that the claimant appeared frustrated that he did not recommend surgery.

Physical therapy treatment notes for March 2007 indicate that the claimant continued to report pain in her neck and back but that her "subjective reports [were] in excess of her general objective presentation." Also in March 2007, the claimant saw Dr. Hyunchul Jung via a referral from Dr. Pencek. Dr. Jung, a pain specialist, recommended,

and later performed, epidural injections. The claimant testified that she underwent four epidural injections, which gave her limited relief in her back and no relief in her neck.

In a note following his May 24, 2007, examination of the claimant, Dr. Pencek opined that the claimant would "benefit from a C5-6 anterior cervical discectomy and fusion." In a note following an October 2007 examination, he again stated that the claimant would benefit from a C5-C6 discectomy, and, in his deposition testimony, Dr. Pencek stated that he continued to recommend that surgery for the claimant. He opined that her cervical disc symptoms were caused at least in part by her work accidents and that her lumbar disc problems could have been caused by the work accidents. He also stated, however, that he did not recommend further treatment for her lumbar spine. On cross-examination, Dr. Pencek agreed that much of his evaluation was based on the claimant's subjective complaints.

In a July 12, 2007, report of her second evaluation of the claimant on behalf of Absolute, Dr. Tate stated that she reviewed additional medical records and again examined the claimant before concluding that the claimant was magnifying her symptoms, had reached maximum medical improvement, and likely could return to work with a restriction that she lift no more than 50 pounds. In her deposition, Dr. Tate clarified that her assessment meant that the claimant no longer needed chiropractic or other medical care, or any surgery. Dr. Tate explained that surgery would be warranted only with certain findings of disc-related pain, and she found no evidence that the claimant suffered from disc-related pain.

The claimant testified that her pain continued as of the time of the hearing and that she continued chiropractic care through that date. She further recalled that Dr. Pencek had told her that "it was [her] choice" whether to continue with chiropractic care.

The claimant testified that she was no longer employed by Absolute at the time of her testimony, because "[t]hey laid [her] off because they lost their contract out at the mine." She agreed, however, that Absolute was still cleaning other areas, and she was not aware of any other employees Absolute laid off at the same time it laid her off. She also testified that, at the time she was laid off, she was doing laundry for Absolute in an area not directly connected to the two cleaning contracts Absolute had lost.

At the conclusion of the hearing that was conducted pursuant to section 19(b) of the Act (820 ILCS 305/19(b) (West 2004)), the arbitrator found that the claimant sustained compensable injuries from her employment on both dates and awarded her temporary total disability (TTD) benefits for 49⁶/₇ weeks, for the periods from November 16,

2006, through May 20, 2007, and February 23, 2008, through the date of arbitration, August 5, 2008. The arbitrator also awarded the claimant $24,012.37 in medical expenses and ordered that Absolute authorize a surgery recommended by Dr. Terrence Pencek. In so finding, the arbitrator concluded that the claimant and Dr. Pencek both testified credibly, that the claimant's injury was caused by her employment accidents, and that all of the claimant's medical treatment came in the chain of referrals from her original physicians.

Absolute sought review of the arbitrator's decision before the Commission. In a decision with one commissioner dissenting, the Commission adopted the arbitrator's decision with one correction to clarify the identity of the doctor who made the claimant's referrals and remanded the matter to the arbitrator pursuant to *Thomas v. Industrial Comm'n*, 78 Ill. 2d 327, 399 N.E.2d 1322 (1980). Absolute filed a petition for judicial review of the Commission's decision in the circuit court of Sangamon County. The circuit court confirmed the Commission's decision, and this appeal followed.

For its first assignment of error, Absolute argues that the Commission erred in finding that the claimant did not exceed her choice of physician limitation under the Act. Section 8(a) of the Act, which imposes the "two-physician rule" upon which Absolute relies (*Comfort Masters v. Workers' Compensation Comm'n*, 382 Ill. App. 3d 1043, 1046 (2008)), provides as follows, in pertinent part:

"[T]he employer's liability to pay for \*\*\* medical services selected by the employee shall be limited to:

(1) all first aid and emergency treatment; plus

(2) all medical, surgical and hospital services provided by the physician, surgeon or hospital initially chosen by the employee or by any other physician, consultant, expert, institution or other provider of services recommended by said initial service provider or any subsequent provider of medical services in the chain of referrals from said initial service provider; plus

(3) all medical, surgical and hospital services provided by any second physician, surgeon or hospital subsequently chosen by the employee or by any other physician, consultant, expert, institution or other provider of services recommended by said second service provider or any subsequent provider of medical services in the chain of referrals from said second service provider." 820 ILCS 305/8(a) (West 2006).

The determination as to whether a claimant obtained medical treatment as a result of a valid referral is a question of fact for the Commission. See *Nabisco Brands, Inc. v. Industrial Comm'n*, 266 Ill. App. 3d 1103, 1108, 641 N.E.2d 578 (1994). On appeal, we will reverse the Commission's factual findings only if they are against the manifest

weight of the evidence. *Elmhurst-Chicago Stone Co. v. Industrial Comm'n*, 269 Ill. App. 3d 902, 906, 646 N.E.2d 961 (1995). In order for a finding to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Elmhurst-Chicago Stone Co.*, 269 Ill. App. 3d at 906. Put another way, the Commission's determination on a question of fact is against the manifest weight of the evidence only if no rational trier of fact could have agreed. *Dolce v. Industrial Comm'n*, 286 Ill. App. 3d 117, 120, 675 N.E.2d 175 (1996).

According to Absolute, the claimant chose Dr. Calloway as her first physician but then treated with Drs. Sprinkel, Hertel, and Pencek without a valid referral. Thus, Absolute argues, the claimant treated with two doctors after exhausting her two-physician allowance under the Act. To support this argument, Absolute highlights the fact that the record does not include written referrals for treatment for all four of her physicians, evidence that the claimant or her attorneys were involved in the physician referral process, and evidence that the claimant directed Dr. Calloway to refer her to certain physicians. However, to the extent that Dr. Calloway referred the claimant to certain physicians at the plaintiff's (or her attorney's) urging, we note that the genesis of the referral has no bearing on the issue so long as the claimant's treating doctor ultimately made the referral. See *Elmhurst-Chicago Stone Co.*, 269 Ill. App. 3d at 907 ("No matter how Dr. Bartucci's name initially came up, claimant's treating doctor still referred him to Dr. Bartucci. Accordingly, *** Dr. Bartucci was in the chain of referral ***.").

Absolute further argues at some length that Dr. Calloway's actual referral was nonetheless invalid because it was a "sham" referral designed to circumvent the two-physician rule. However, the record contains not only written evidence, in the form of Dr. Calloway's written referral to Dr. Hertel and Dr. Pencek's treatment note indicating that he saw the claimant on a referral from her chiropractor, but also testimony to establish that Drs. Hertel and Pencek saw the claimant based on referrals from Dr. Calloway. Those referrals, whose purposes the claimant explained in her testimony, provide more than ample basis for the Commission's finding that Dr. Calloway validly sent the claimant to other physicians and thus that the claimant did not exceed her two-physician limitation.

Absolute next argues that the Commission erred in finding that the claimant's condition of ill-being was causally related to her workplace accidents. A prerequisite to the right to recover benefits under the Act is some causal relationship between the claimant's employment and the injury suffered. *Schwartz v. Industrial Comm'n*, 379 Ill. 139, 144-45, 39 N.E.2d 980 (1942). Compensation may be

awarded under the Act even if the conditions of employment do not constitute the sole or principal cause of the claimant's injury. *Brady v. Louis Ruffolo & Sons Construction Co.,* 143 Ill. 2d 542, 548, 578 N.E.2d 921 (1991). "[A] preexisting condition does not prevent recovery under the Act if that condition was aggravated or accelerated by the claimant's employment." *Caterpillar Tractor Co. v. Industrial Comm'n,* 92 Ill. 2d 30, 36, 440 N.E.2d 861 (1982).

For its argument that the claimant's injuries bore no causal relationship to her work, Absolute relies on evidence that she suffered some back or neck problems several years prior to her workplace accidents, evidence that the claimant was magnifying her symptoms after the accidents, and evidence that the claimant had a preexisting degenerative disc disease. However, the record indicates that the claimant was able to work prior to the accidents now at issue, and the claimant testified that her prior problems had abated by the date of her first workplace accident. Further, Dr. Pencek opined that her work activities exacerbated or caused her condition of ill-being and led to her need for surgical intervention. In fact, even Dr. Tate, who examined the claimant at Absolute's request, concluded that the claimant's work accidents caused or exacerbated her condition. Based on this evidence, we conclude that a rational trier of fact could have agreed with the Commission's finding that the claimant's condition of ill-being was causally related to her work. Accordingly, we reject Absolute's argument that the Commission's finding on that point was against the manifest weight of the evidence.

Absolute next argues that the Commission erred in finding that certain of the claimant's medical treatment was reasonable and necessary. Under section 8(a) of the Act (820 ILCS 305/8(a) (West 2006)), a claimant is entitled to recover reasonable medical expenses, the incurrence of which are causally related to an accident arising out of and in the scope of her employment and which are necessary to diagnose, relieve, or cure the effects of the claimant's injury. *University of Illinois v. Industrial Comm'n,* 232 Ill. App. 3d 154, 164, 596 N.E.2d 823 (1992). Whether a medical expense is either reasonable or necessary is a question of fact to be resolved by the Commission, and its determination will not be overturned on review unless it is against the manifest weight of the evidence. *F&B Manufacturing Co. v. Industrial Comm'n,* 325 Ill. App. 3d 527, 534, 758 N.E.2d 18 (2001).

Absolute argues that the Commission should not have awarded the claimant her medical expenses for visits to Dr. Calloway up until the time of arbitration or for her medical treatment rendered by Dr. Pencek. Regarding Dr. Calloway's care, Absolute contends that chiropractic care did not resolve the claimant's problems or, alterna-

tively, that the claimant's condition resolved long before she stopped seeing Dr. Calloway. However, the Commission found, based on the claimant's testimony, that chiropractic care provided her with temporary relief from her symptoms, and, on that basis, the Commission concluded that the chiropractic care was reasonable and necessary. Because that finding has an evidentiary basis in the record, we will not disturb it on appeal. Absolute's argument that Dr. Pencek's treatment was unnecessary is premised on the notion that the claimant had no medical basis for her complaints and thus did not actually require treatment. However, Dr. Pencek testified that the claimant did require treatment, and in fact required surgery. This testimony supports the Commission's finding that Dr. Pencek's care was reasonable and necessary, and we conclude that the finding was not against the manifest weight of the evidence.

Absolute's fourth argument on appeal is that the Commission erred in awarding the claimant expenses for the future operation recommended by Dr. Pencek. This question regarding the reasonableness of the claimant's medical expenses presented a factual issue, and Dr. Pencek's testimony that the surgery was necessary provided ample basis for the Commission's finding that the surgery was, in fact, reasonable and necessary. Consequently, we cannot say that the Commission's finding in this regard was against the manifest weight of the evidence, and we will not disturb the finding on appeal.

Finally, Absolute argues that the Commission should not have awarded the claimant TTD benefits. An employee is temporarily totally disabled from the time that an injury incapacitates her from work until such time as she is as far recovered or restored as the permanent character of her injury will permit. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118, 561 N.E.2d 623 (1990). Once an injured employee's physical condition stabilizes or she reaches maximum medical improvement, she is no longer eligible for TTD benefits. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118. The determination of the period of time during which a claimant is temporarily and totally disabled is a question of fact to be resolved by the Commission, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Archer Daniels Midland Co.*, 138 Ill. 2d at 119-20.

Absolute asserts that TTD benefits were inappropriate here for two reasons. First, it argues that the medical evidence disproves the claimant's assertion that she suffered from any significant injury and thus belies the conclusion that she was temporarily totally disabled. We have rejected this contention above as it relates to Absolute's argument that the medical services she received were unnecessary, and we reject it again here.

Second, Absolute argues that the claimant should not receive TTD benefits after the date she was laid off because her termination was due to economic conditions. Accordingly, Absolute asserts, the claimant's disability no longer caused her inability to work and should no longer have supported its liability under the Act. The Commission rejected this argument, however, by finding that Absolute's decision to terminate the claimant's employment was not due to economic conditions. In so finding, the Commission cited, *inter alia*, evidence that, at the time she was laid off, the claimant was not working at any of the mines that cancelled their contracts with Absolute. Based on this evidence, we conclude that the Commission's finding regarding the cause of the claimant's termination was not against the manifest weight of the evidence. That finding forecloses Absolute's argument that the cause of the claimant's termination should affect her entitlement to TTD benefits, and we do not consider the argument further.

Based upon the foregoing analysis, we affirm the judgment of the circuit court, which confirmed the Commission's decision, and remand the matter to the Commission for further proceedings.

Affirmed and remanded.