2020 IL App (1st) 191268WC-U

Workers' Compensation
Commission Division
Order Filed: March 20, 2020

No. 1-19-1268WC

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| AIR WISCONSIN AIRLINES, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| | ) | Nos. 2018 L 50342, |
| v. | ) | consolidated with |
| | ) | 2018 L 50343, |
| | ) | 2018 L 50348, and |
| | ) | 2018 L 50349 |
| | ) | |
| THE ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION *et al.*, | ) | Honorable |
| | ) | Michael F. Otto, |
| (Thomas Costello, Appellee). | ) | Judge, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hudson, Cavanagh, and Barberis concurred in the judgment.

**ORDER**

¶ 1     *Held:*    We affirmed the circuit court's judgment confirming the Workers' Compensation's decisions finding that the claimant sustained injuries to his left leg and right knee that arose out of and in the course of his employment and awarding the claimant benefits under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.*

(West 2012)), over the employers argument that the Commission's decisions are against the manifest weight of the evidence.

¶ 2 Air Wisconsin Airlines (Air Wisconsin) appeals from an order of the circuit court of Cook County that confirmed a decision of the Illinois Workers' Compensation Commission (Commission), which found that the claimant, Thomas Costello, sustained injuries to his left leg and right knee that arose out of and in the course of her employment and awarded him benefits pursuant to the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2012)), including temporary total disability (TTD) benefits and permanent partial disability (PPD) benefits, and ordered it to pay certain specified medical expenses incurred by the claimant. For the reasons which follow, we affirm.

¶ 3 The issues in this appeal involve the benefits awarded to the claimant for injuries to his left leg and right knee. Consequently, the following recitation of facts taken from the evidence adduced at the arbitration hearings held on June 19, 2017, and August 18, 2017, is limited to facts relevant to the Commission's award of benefits for the injuries suffered by the claimant to his left leg and right knee.

¶ 4 At all times relevant, the claimant was employed by Air Wisconsin as a mechanic. The parties stipulated that he sustained accidental injuries that arose out of and in the course of his employment on March 10, 2007, when he fell approximately 8 feet to the ground from a ladder while attempting to inspect the engines of an airplane. When he returned to the hanger on that same day, the claimant slipped and fell on oil and water on the hanger floor. The claimant testified that, as he fell, he twisted his left leg and landed on his tail bone. According to the claimant, he experienced pain in his left leg and knee. He continued working. He stated that between March 10,

2007, and April 28, 2007, he experienced popping and locking of his left knee, swollen hands, and back pain.

¶ 5    The claimant first sought medical treatment on April 28, 2007, when he saw his personal physician, Dr. John Oliveri. Following his examination of the claimant, Dr. Oliveri referred him to Dr. Blair Rhode, an orthopedic surgeon. The claimant stated that, due to his work schedule, he did not immediately make an appointment to see Dr. Rhode or return for a follow-up visit with Dr. Oliveri.

¶ 6    The claimant testified that, on May 13, 2007, he slipped on fluid while working and fell to the ground. He stated that he experienced pain in his left knee. Again, the parties stipulated that the claimant sustained accidental injuries on that date that arose out of and in the course of his employment with Air Wisconsin. According to the claimant, the left leg and knee symptoms that he experienced following his March 10, 2007 fall worsened following his fall on May 13, 2007. He stated that, following his May 13, 2007 fall, he noticed that his left leg was swollen.

¶ 7    On June 19, 2007, the claimant sought medical treatment at Work Net in Lester, Pennsylvania. During that visit, the claimant complained of bilateral elbow pain and bilateral knee pain. The initial assessment following his examination on that day was bilateral knees PFS, right knee osteophyte or small joint body, left knee degenerative joint disease, and a possible lateral meniscus tear. MRI scans of both of the claimant's knees were ordered and physical therapy was prescribed.

¶ 8    The claimant underwent MRI scans of both knees on June 26, 2007. The MRI of the claimant's left knee revealed the following: a truncated posterior horn and body of the medial meniscus associated with medial compartment degenerative changes, most likely representing

chronic degenerative tears; a small chondral cleft on the lateral facet of the patella associated with surface irregularities; and moderate joint diffusion with a tiny popliteal cyst. The MRI of the claimant's right knee showed evidence of a small popliteal cyst.

¶ 9    The claimant returned to Work Net for follow-up treatment and physical therapy in July and August of 2007. He was diagnosed with left knee degenerative joint disease and referred to Dr. Armando Mendez at Premier Orthopedics in Ridley Park, Pennsylvania, for an orthopedic consultation.

¶ 10    The claimant was seen by Dr. Mendez on August 20, 2007, complaining of pain in his left knee. Following his examination of the claimant, Dr. Mendez diagnosed an acute left knee sprain and a medial meniscal tear of the left knee and recommended surgery. The claimant was not restricted from performing his regular work duties.

¶ 11    The claimant returned to Illinois and, on referral from Dr. Oliveri, was first seen by Dr. Rhode on September 10, 2007. The claimant complained of worsening left knee pain, along with popping and locking. He also reported weight gain, arthralgia and joint stiffness, and pain in his upper and lower extremities, bilaterally. Following his examination of the claimant, Dr. Rhode diagnosed a left meniscal internal derangement with left knee pain. He recommended that the claimant have surgery. According to the claimant, Dr. Rhode took him off of work following that visit. However, Dr. Rhodes records contain a notation of full duty work status.

¶ 12    On October 16, 2007, the claimant underwent the recommended surgery. Dr. Rhode performed a left knee arthroscopic partial medial meniscectomy and video-assisted chondroplasty to the medial femoral condyle. The claimant continued to treat with Dr. Rhode post-operatively. Dr. Rhode testified that, following surgery, the claimant continued to complain of "moderate to

significant" symptoms despite ongoing treatment and physical therapy.

¶ 13    Dr. Rhode's records reflect that he took the claimant off of work on October 24, 2007. His records also reflect that the claimant was seen on November 7, 2007, complaining of medial-sided right knee pain, following his use of crutches for weight bearing. On recommendation of Dr. Rhode, the claimant began physical therapy on November 13, 2007.

¶ 14    On November 28, 2007, Dr. Rhode authorized the claimant to return to full duty work. The claimant testified that he returned to work at Air Wisconsin as a lead mechanic.

¶ 15    Following his return to work, the claimant continued to treat with Dr. Rhode throughout 2008 and 2009. During that period, the claimant continued to complain of left knee pain, for which Dr. Rhode prescribed pain medication and physical therapy.

¶ 16    When the claimant saw Dr. Rhode on March 8, 2009, he exhibited symptoms of cellulitis in his left lower extremity. Dr. Rhode continued to prescribe pain medication and physical therapy.

¶ 17    On March 18, 2009, the claimant had an MRI scan of his left knee. The scan failed to reveal any evidence of a recurrent meniscal tear.

¶ 18    Dr. Rhode's records reflect that the cellulitis in the claimant's left leg was stable by April 3, 2009.

¶ 19    The claimant testified that, on July 9, 2009, he again slipped and fell on oil and water while working. He stated that the fall aggravated the condition of his left leg. When the claimant saw Dr. Rhode on August 10, 2009, he reported that his left knee pain and swelling had worsened. Dr. Rhode prescribed pain medication but discontinued physical therapy.

¶ 20    On February 11, 2010, the claimant was working as an inspector in the hanger area of the Philadelphia airport. According to the claimant, he was told to move his car, which was parked 10

or 15 feet in front of the main hanger door. As he was walking to the car, he slipped on ice and grabbed the door of his car to prevent falling to the ground. The claimant testified that, as he slipped, his right leg went out from under him and he felt pain in his right knee. The claimant's version of the event was unrebutted.

¶ 21 On February 19, 2010, the claimant sought treatment at Work Net. During that visit, the claimant reported having severely twisted his right knee when he slipped on ice on February 11, 2010, and that his right leg began to swell. Following examination, the claimant was diagnosed with a sprain and strain of his right knee. The claimant was given work restrictions and advised to get an MRI scan of his right knee.

¶ 22 On February 22, 2010, the claimant sought treatment for his right knee from Dr. Rhode. He complained of right knee pain. Dr. Rhode recorded a history of the claimant having sustained a twisting axil load injury to his right knee while working. Following his examination of the claimant, Dr. Rhode diagnosed a medial meniscus tear of the right knee and ordered an MRI scan of the knee. Dr. Rhode placed the claimant on light duty status.

¶ 23 On March 10, 2010, the claimant had an MRI scan of his right knee, which revealed large joint effusion. When the claimant was seen by Dr. Rhode on that same day, he was diagnosed as suffering from a posterior horn meniscus tear. Dr. Rhode recommended surgery and took the claimant off of work for his right knee condition.

¶ 24 When the claimant saw Dr. Rhode on July 5, 2010, he again complained of right knee pain. Dr. Rhode's notes of that visit state that he discussed various options for treatment with the claimant and that the claimant voiced his wish to proceed with surgery. According to the notes, Dr. Rhode continued to recommend that the claimant lose weight. Those notes state that the

"[claimant] accrued his weight gain due to his sedentary activity due to his injury."

¶ 25    Beginning August 2, 2010, Air Wisconsin's workers' compensation insurance carrier placed the claimant under medical case management by Genex for the injuries to his right knee. Nurse Mary Ann Drafke of Genex reported an injury date of February 11, 2010.

¶ 26    On September 16, 2010, Dr. Rhode operated on the claimant's right knee, performing a right partial medial meniscectomy. His post-operative diagnosis was a right knee medial meniscus tear.

¶ 27    Following surgery, the claimant continued to treat with Dr. Rhode, complaining of right knee pain. In his notes of the claimant's December 10, 2010 visit, Dr. Rhode noted that the claimant was status post partial medial meniscectomy with a medial chondral lesion. Dr. Rhode prescribed pain medication and physical therapy.

¶ 28    On December 20, 2010, the claimant was examined by Dr. Brian Cole at the request of Air Wisconsin. In his report of that examination, Dr. Cole stated that the claimant exhibited pain in his right lower extremity, tenderness throughout his right knee, and a limited range of motion. He noted, however, that the claimant's symptoms were out of proportion to the very minimal objective findings. As to the left knee, Dr. Cole wrote that the plaintiff was tender to palpation medially with a range of motion from 0 to 95 degrees and was warm to the touch. Dr. Cole diagnosed right knee medial varus DJD and left knee mild to moderate osteoarthritis. According to Dr. Cole, the claimant's left knee condition was not related to a work injury but, rather, to a pre-existing osteoarthritic condition that did not require any further treatment. He recommended an updated MRI of the right knee to rule out an adverse process. Dr. Cole opined that the claimant's complaints relating to his right knee were the result of slipping on ice. He was also of the opinion that the

claimant was capable of sedentary work.

¶ 29    Also on December 20, 2010, the claimant had a follow-up examination by Dr. Rhode. Upon examination of the claimant's right knee, Dr. Rhode found the claimant to be status post medial meniscectomy with a medial chondral lesion. According to Dr. Rhode, based upon the surgical images, the claimant's right knee condition is not degenerative in nature. He recommended that the claimant have an updated MRI of the right knee to address the condylar lesion, and he kept the claimant on off-work status.

¶ 30    On December 28, 2010, Nurse Drafke of Genex issued a closure report stating that it was a future goal for the claimant to reach maximum medical improvement (MMI).

¶ 31    The claimant continued treatment with Dr. Rhode throughout 2011 for both his left leg and right knee complaints. On January 17, 2011, the claimant saw Dr. Rhode, complaining of swelling and pain in his right knee. Dr. Rhode found evidence of pitting edema, but a DVT exam was negative. Dr. Rhodes testified that the claimant's physical condition continued to deteriorate due to swelling in his lower extremities. He opined that the claimant's left leg condition worsened as a result of his inability to rely upon his right knee following surgery.

¶ 32    Based upon Dr. Cole's opinion that the claimant was capable of sedentary work, Air Wisconsin offered the claimant a sedentary position on February 2, 2011. The claimant admitted that he did not accept the position.

¶ 33    When the claimant was seen by Dr. Rhode on February 11, 2011, he complained of significant leg swelling. On examination, Dr. Rhode noted that the claimant's right and left knees were tender on the medial joint lines. Dr. Rhode prescribed continued physical therapy, and he referred the claimant both for evaluation of his pitting edema and to a cardiac specialist.

¶ 34    On March 7, 2011, the claimant had an MRI scan of his lumbar spine, which was ordered due to his complaints of low back pain. The scan revealed degenerative disc disease at L4-L5, resulting in a moderate narrowing of the central spinal canal.

¶ 35    On March 10, 2011, Air Wisconsin terminated the claimant for failing to report for work.

¶ 36    The claimant saw Dr. Rhode on March 25, 2011, complaining of bilateral knee pain. According to Dr. Rhode's notes of that visit, the claimant developed left knee pain due to compensation for the condition of his right knee post-operatively.

¶ 37    On May 16, 2011, Dr. Rhode noted that the claimant had entered a lymphedema clinic. In his notes of that visit, Dr. Rhone wrote that the claimant was experiencing left knee pain due to the post-operative condition of his right knee. He recommended continued physical therapy for both of the claimant's knees.

¶ 38    In his notes of the claimant's May 16, 2011 visit, Dr. Rhode recorded the claimant's complaints of ongoing left knee pain. He also noted that the claimant was receiving treatment for lymphedema. On June 11, 2011, Dr. Rhode again noted the claimant's ongoing lymphedema treatment and evidence of the claimant's significant edema.

¶ 39    The claimant was seen by Dr. Rhode on July 11, 2011, for a follow-up visit, complaining of bilateral knee pain. On examination of the claimant's right knee, Dr. Rhode noted patella femoral compression and medial and lateral joint line tenderness. On examination of the claimant's left knee, Dr. Rhode noted medial joint line tenderness and pitting edema.

¶ 40    On October 11, 2011, the claimant reported ongoing bilateral knee pain to Dr. Rhode. The notes of that visit indicate that the claimant was using edema gloves for swelling. Dr. Rhodes kept the claimant on off-work status.

¶ 41    In his notes of the claimant's November 7, 2011 visit, Dr. Rhode recorded that the claimant was experiencing bilateral knee pain as a result of his work accidents and that he was walking with a cane. Dr. Rhode prescribed medication and recommended that the claimant remain off of work.

¶ 42    The claimant continued to treat with Dr. Rhode throughout 2012 on a monthly basis, receiving pain medication and off-work authorizations. On January 9, 2012, the claimant complained of bilateral knee pain, and it was noted that he was using both a cane and a knee brace.

¶ 43    On February 13, 2012, Dr. Rhode's physician's assistant (PA), Mark Bordick, noted moderate edema in the claimant's right leg. PA Bordick noted the same observation on May 14, 2012.

¶ 44    On June 14, 2012, the claimant was examined by Dr. M. Bryan Neal at the request of Air Wisconsin. When deposed, Dr. Neal testified to the medical records of the claimant that he reviewed and the extent of his examination of the claimant. He stated that the claimant described a "hundred percent, phenomenal" recovery from the surgery performed by Dr. Rhode. Dr. Neal was of the opinion that, as of the date of his examination, the claimant had fully recovered from the meniscal tear he suffered on February 11, 2011, and needed no further medical treatment for that condition. According to Dr. Neal, the claimant had a pre-existing right knee arthritic condition and that he would have suffered pain from the condition in any case. He stated that a meniscal tear such as the one suffered by the claimant could have arisen as the result of that arthritic condition without any specific injury. Dr. Neal also testified that the weight the claimant gained following his right knee surgery was not the result of the meniscal tear or his work accident of February 11, 2011. Dr. Neal was of the opinion that, absent the claimant's mental state, obesity, and lymphedema, the injury to his right knee would not prevent him from returning to full-duty work.

He admitted, however, that, based upon the totality of the claimant's symptoms, he should not return to work as an aircraft mechanic. Dr. Neal did not release the claimant to return to work. Dr. Neal did not believe that the claimant's lymphedema arose solely from his work injury and subsequent surgery. He did admit that immobility can cause swelling. He also admitted that surgery can exacerbate lymphedema. Dr. Neal opined, however, that the claimant's obesity, lymphedema, and arthritis in both knees pre-existed the events of February 11, 2011.

¶ 45    As of November 5, 2012, Dr. Rhode was still prescribing pain medication for the claimant and recommending that he remain off of work.

¶ 46    Dr. Rhode's treatment of the claimant in 2013 consisted of prescribing medication. On February 19, 2013, PA Bordick noted the claimant's complaints of bilateral knee pain and significant edema. On March 25, 2013, PA Bordick noted the claimant's pain complaints along with evidence of pitting edema to both of the claimant's lower extremities. On April 22, 2013, the claimant was referred to a lymphedema specialist.

¶ 47    On November 11, 2013, PA Bordick noted that the claimant's significant edema precluded surgical intervention. He recommended that the claimant undergo aqua-therapy and remain off of work.

¶ 48    Dr. Rhodes continued to treat the claimant monthly and prescribe medication throughout 2014. On December 8, 2014, PA Bordick noted that the claimant's condition remained the same. He was still experiencing bilateral knee pain and significant edema. Dr. Rhode continued to keep the claimant off of work.

¶ 49    The claimant saw Dr. Rhode throughout 2015, receiving pain medication and off-work authorizations. Dr. Rhode's records of January 12, 2015, and February 9, 2015, state that the

claimant had reached MMI. On May 8, 2015, PA Bordick noted that the claimant was suffering from increased edema into the left shoulder. On June 11, 2015, and September 14, 2015, PA Bordick noted that the claimant's condition remained unchanged and that he was using a wheelchair. On December 14, 2015, Dr. Rhode again ordered that the claimant remain off of work.

¶ 50    The claimant continued to treat with Dr. Rhode for right knee pain throughout 2016. On September 26, 2016, PA Bordick noted that the claimant's condition remained unchanged and that he was still using a wheelchair. Dr. Rhode again ordered that the claimant remain off of work and noted that his condition is permanent.

¶ 51    During his treatment with Dr. Rhode in 2017, the claimant's condition remained unchanged. He continued to experience bilateral knee pain, was still wheelchair bound, and remained off of work on orders of Dr. Rhode. On June 5, 2017, Dr. Rhode recommended that the claimant have low level laser treatments, and he prescribed Ultram.

¶ 52    Dr. Rhode was deposed and testified to the treatment he rendered to the claimant from 2007 through 2017. He testified that the claimant suffered a left knee meniscus tear with a chondral lesion to the weight bearing portion of the medial femoral condyle and opined that the claimant's left knee condition was the result of his work accident. Dr. Rhode based that opinion on the mechanism of injury described by the claimant as a twisting axial load, the claimant's subjective complaints, his clinical findings, the MRI scans of the left knee, and his intraoperative surgical findings. He admitted that he released the claimant to return to full duty work on November 28, 2007. Dr. Rhode stated that, assuming the claimant tolerated full duty work, he would have placed the claimant at MMI status around April 2008. He testified, however, that he continued to provide ongoing treatment for the claimant's left leg and continued to prescribe medication for the

condition. According to Dr. Rhode, the medical treatment he rendered to the claimant for his left knee condition was reasonable and necessary.

¶ 53     As to the claimant's right knee, Dr. Rhode testified to his treatment. According to Dr. Rhode, the claimant suffered a medial meniscus tear of the right knee as a result of his February 11, 2010 work accident. He testified that his opinion in that regard is based on the mechanism of injury—a twisting axial load—described by the claimant. He admitted that the claimant had subjective signs of right knee joint tenderness as early as November 7, 2007. He believed, however, that the claimant's 2007 right knee complaints were compensatory in nature and not the result of any underlying meniscal tear. Dr. Rhode stated that, by March 25, 2011, the claimant was experiencing bilateral knee pain that was worse on the left due to compensation for the condition of his right knee. Dr. Rhode stated that the claimant's prognosis is guarded as he is not a candidate for a right knee replacement due to significant lymphedema. He opined that the claimant's post-traumatic degenerative changes had exacerbated his weight gain and lymphedema. According to Dr. Rhode, the claimant had not reached MMI. He stated that the medical treatment he rendered to the claimant for his right knee condition was both reasonable and necessary.

¶ 54     When he was deposed on September 25, 2015, Dr. Rhode diagnosed the claimant with significant weight gain and lymphedema, which were aggravated by post-traumatic degenerative changes. According to Dr. Rhode, there was "an aggravating component to the [claimant's] bilateral knee surgeries and his weight gain." Regarding the edema present in the claimant's lower extremities, bilaterally, Dr. Rhode observed that he noticed a significant change, including open sores, postoperatively. He was of the opinion that the claimant's weight gain and lymphedema were the reason for his inability to work.

¶ 55    The claimant testified that, prior to his work accidents, he never received medical treatment for either his left leg or right knee. At the time of the arbitration hearings, both of the claimant's lower extremities were swollen. He stated that he also experiences daily swelling in his hands and left arm, along with fluid buildup in his stomach. According to the claimant, the swelling began after his work accidents. He testified that his left leg was approximately three times the size of his right leg; his left foot is a size 21, whereas his right foot is a size 14; and he has fluid on both the inner and outer thighs of both legs and the bicep of his left arm. He also stated that his "left leg, left foot and the left shin bone looks like a tumor down there from the lymphedema." He testified that he experiences constant pain in both legs and walks with two canes. The claimant's weight increased from 270 pounds to as high as 450 pounds. At the time of the arbitration hearing, the claimant weighed 422 pounds, 150 pounds of which was fluid.

¶ 56    The six applications for adjustment of claim filed by the claimant pursuant to the Act sought benefits for injuries to his head, left leg and right knee sustained while working for Air Wisconsin. The injuries to the claimant's head which were alleged to have been sustained on September 15, 2006, and September 29, 2006, were assigned arbitration case numbers 07WC027877 and 07WC027876, respectively. The injuries to the claimant's injuries left leg alleged to have been sustained on March 10, 2007, and May 13, 2007, were assigned arbitration case numbers 07WC024016 and 07WC027875, respectively. The injuries to his left leg alleged to have been sustained on July 9, 2009, was assigned arbitration case number 12WC023181. The injuries to the claimant's right knee alleged to have been sustained on February 11, 2010, was assigned arbitration case number 10WC009235. The six cases were consolidated for hearing purposes.

¶ 57    Following arbitration hearings held on June 19, 2017, and August 18, 2017, the arbitrator rendered six decisions. In case number 07WC027876, the arbitrator found that the claimant sustained injuries to his head that arose out of and in the course of his employment with Air Wisconsin but suffered no lost time or permanent partial disability as a result of the accident. In that case, the arbitrator awarded the claimant medical expenses for the services rendered by Dr. John Oliveri. As to case number 07WC027877, the arbitrator found that the claimant suffered no lost time or permanent partial disability and, as a consequence, awarded the claimant no benefits under the Act. In case numbers 07WC024016, 07WC027875 and 12WC023181, the arbitrator found that the claimant sustained injuries to his left leg that arose out of and in the course of his employment with Air Wisconsin and that his condition of left leg ill-being is causally related to his work accidents. As the result of the injuries suffered by the claimant to his left leg, the arbitrator awarded all of the benefits due the claimant in the decision rendered in case 07WC027875. In that decision, the arbitrator awarded the claimant: 11 2/7 weeks of TTD benefits for the period from September 10, 2007, through November 28, 2007; medical expenses for services rendered by Dr. Blair Rhode of Orland Park Orthopedics, Dr. John Oliveri of Tinley Primary Care, Palos Community Hospital, and Work Net Occupational Therapy; and permanent PPD benefits for 35% loss of use of the left leg. In case number 10WC009235, the arbitrator found that the claimant sustained injuries to his right knee on February 11, 2010, that arose out of and in the course of his employment with Air Wisconsin and that his condition of right leg ill-being is causally related to his work accident. As a consequence, the arbitrator awarded the claimant: 343 weeks of TTD benefits for the period February 12, 2010, through September 16, 2016; medical expenses for services rendered by Dr. Blair Rhode and Dr. John Oliveri; and PPD benefits for 35% loss of use

of the person as a whole.

¶ 58    Both Air Wisconsin and the claimant filed petitions for review of the arbitrator's decisions before the Commission. The Commission consolidated the cases but assigned separate case numbers to each claim and, on May 30, 2018, issued six separate decisions. Arbitration case number 07WC027877 was docketed by the Commission as case number 18IWCC0331; Arbitration case number 07WC027876 was docketed by the Commission as case number 18IWCC0332; Arbitration case number 07WC024016 was docketed by the Commission as case number 18IWCC0335; Arbitration case number 07WC027875 was docketed by the Commission as case number 18IWCC0333; Arbitration case number 12WC0273181 was docketed by the Commission as case number 18IWCC0334; and Arbitration case number 10WC009235 was docketed by the Commission as case number 18IWCC0330.

¶ 59    In case numbers 18IWCC0331, 18IWCC0332, 18IWCC0334 and 18IWCC0335, the Commission affirmed and adopted the arbitrator's decision. In case number 18IWCC0333, the Commission modified the claimant's TTD award to 6 2/7 weeks of benefits for the period from October 16, 2007, through November 28, 2007, and affirmed and adopted the arbitrator's decision in all other respects. In case number 18IWCC0330, the Commission modified the claimant's TTD award to 343 1/7 weeks of benefits for the period from February 19, 2010, through September 16, 2016, and affirmed and adopted the arbitrator's decision in all other respects.

¶ 60    Both Air Wisconsin and the claimant sought judicial review of the Commission's decisions in case numbers 18IWCC0330, 18IWCC033, 18IWCC0334, and 18IWCC0335. Neither party sought judicial review of the Commission's decisions in case numbers 18IWCC0331 or 18IWCC0332. The circuit court of Cook County consolidated the cases and issued a single

decision on May 22, 2019, confirming the Commission's decisions in all four cases under review. Air Wisconsin filed the instant appeal.

¶ 61    Before addressing Air Wisconsin's claims of error in this appeal, we find it necessary to correct the circuit court's misconception that the source of its power of review in this case is derived from the Administrative Review Law (735 ILCS 5/ 3-101 *et seq.* (West 2018)). Section 3-102 of the Administrative Review Law specifically provides that the statute only applies to administrative decisions "where the Act creating or conferring power on the agency, by express reference, adopts the provisions of the Administrative Review Law." 735 ILCS 5/ 3-101 *et seq.* ((West 2018). The statute that created the Commission, the Illinois Workers' Compensation Act, does not adopt the Administrative Review Law. Consequently, the Administrative Review Law does not control the review of Commission decisions, nor is it the source of the circuit court's power to review those decisions. *Dobbs Tire & Auto v. Illinois Workers' Compensation Commission*, 2018 IL App (5th) 160297WC, ¶ 17.

¶ 62    For its first assignment of error, Air Wisconsin argues that the Commission's findings of a causal connection between the claimant's current condition of left leg ill-being and his employment accidents are against the manifest weight of the evidence. Air Wisconsin notes that the claimant was returned to full duty work on November 28, 2007, by Dr. Rhode, and he continued to work in a full duty capacity until February 10, 2010, when he injured his right knee. According to Air Wisconsin, Dr. Rhode did not treat the claimant for his left leg injuries from August 10, 2009, through February 22, 2010. It concludes that the injuries to the claimant's left leg resulting from his work accident had resolved by November 28, 2007, when he was returned to full duty work or, at the latest, in April 2008, when Dr. Rhode testified that, assuming the claimant tolerated

full duty work, he would have placed him at MMI.

¶ 63    Whether a causal relationship exists between a claimant's employment and his injury is a question of fact to be resolved by the Commission, and its resolution of the issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Certi-Serve, Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244 (1984). For the Commission's resolution of a fact question to be contrary to the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Tolbert v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130523WC, ¶ 39. Whether a reviewing court might reach the same conclusion is not the test of whether the Commission's determination of a question of fact is supported by the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's determination. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 64    The claimant testified that he experienced pain in his left leg and knee at the time of his fall on March 10, 2007, and that his symptoms worsened following his fall on May 13, 2007. He also testified that he noticed that his left leg began to swell following the May 13, 2007 fall. The claimant's June 26, 2007 MRI of his left knee revealed a tear of the medial meniscus. According to the claimant, he never received medical treatment for his left leg prior to his work accidents. On October 16, 2007, the claimant underwent left knee surgery and received medical treatment and physical therapy for the knee postoperatively. The claimant's medical records reflect that he complained of continued pain in his left leg and was treated by Dr. Rhode during 2008. Contrary to Air Wisconsin's assertion, Dr. Rhode's records establish that the claimant was treated by Dr. Rhode for left leg pain and swelling in July and August of 2009. During those visits, the claimant complained of left leg and knee pain, which had worsened following his fall at work on July 9,

2009. He also complained of left leg swelling during that period. The claimant testified that his fall while working on July 9, 2009, aggravated his left leg condition, causing increased pain and swelling. There is no question that the claimant was returned to full duty employment on November 28, 2007, by Dr. Rhode, and he continued to work in a full duty capacity until February 11, 2010. However, it is also clear that Dr. Rhode continued to treat the claimant's left leg condition in July and August of 2009, notwithstanding his testimony that, assuming the claimant tolerated full duty work, he would have placed him at MMI in April 2008. When deposed in September of 2015, Dr. Rhode testified that he continued to provide ongoing treatment for the claimant's left leg condition.

¶ 65    Dr. Rhode opined that the claimant's left knee condition is the result of his work accidents. In contrast, Dr. Cole opined that the claimant's left knee condition was the result of a pre-existing osteoarthritic condition and not a work injury. Whether a claimant's disability is solely attributable to a pre-existing condition is a question of fact to be resolved by the Commission. *Sisbro v. Industrial Comm'n*, 207 Ill. 2d 193, 205-06 (2003). It was the Commission's function to resolve the conflicts in the medical opinions of Dr. Rhode and Dr. Cole, assess their credibility, and assign weight to their testimony. *ABBF Freight System v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 141306WC, ¶ 19. The arbitrator specifically adopted Dr. Rhode's causation opinions, and the Commission affirmed and adopted the arbitrator's decision on that issue. Based upon the record before us, we are unable to find that an opposite conclusion is clearly apparent. For this reason, we reject Air Wisconsin's argument that the Commission's finding of a causal connection between the claimant's current condition of left leg ill-being and his employment accidents is against the manifest weight of the evidence.

¶ 66    Next, Air Wisconsin argues that the Commission's award 6 2/7 weeks of TTD benefits for the period from October 16, 2007, through November 28, 2007, for the injury to the claimant's left leg is against the manifest weight of the evidence. It claims that the appropriate period of TTD is from October 24, 2007, through November 28, 2007, because it was not until October 24, 2007, that Dr. Rhode placed the claimant on off-work status. We find no merit in the argument.

¶ 67    Air Wisconsin objects only to the TTD benefits awarded to the claimant for the period from October 16, 2007, through October 23, 2007. However, as Air Wisconsin acknowledges in its brief, the claimant underwent left knee surgery on October 16, 2007. That surgery consisted of a left knee arthroscopic partial medial meniscectomy and video-assisted chondroplasty to the medial femoral condyle. One need not be a physician to conclude that the claimant was unable to work on the date of his surgery, and the Commission could reasonably infer that he was unable to work during the 7 days thereafter. The duration of TTD is a factual question to be resolved by the Commission, and its resolution of the issue will not be disturbed on review unless it is against the manifest weight of the evidence. *Archer Daniels Midland Co. v. Industrial Comm'n*, 138 Ill. 2d 107, 118 (1990). Based on the record before us, we conclude that the Commission's award of TTD benefits for the period of October 16, 2007, through November 28, 2007, for the injury to the claimant's left leg is not against the manifest weight of the evidence.

¶ 68    Next, Air Wisconsin argues that that the Commission's award of medical expenses for treatment of the claimant's left knee after August 2008 is against the manifest weight of the evidence. Its argument in this regard is based upon the assertion that Dr. Rhode testified that the claimant's left leg condition stabilized as of April 28, 2008. According to Air Wisconsin, the claimant's medical records do not show a change or improvement in his left knee that would

support the ongoing payment of medical bills. We disagree.

¶ 69    The claimant underwent left knee surgery on October 16, 2007, for a condition which Dr. Rhode opined is causally related to his work accidents. Although Dr. Rhode testified that, assuming the claimant tolerated full duty work, he would have placed him at MMI in April 2008 and the claimant worked full duty until February 11, 2010, the fact remains that the claimant complained of ongoing left knee pain and was treated for the condition by Dr. Rhode subsequent to April 2008. As noted earlier, Dr. Rhode testified that that the medical services that he rendered were both reasonable and necessary and that he continued to provide ongoing treatment for the claimant's left leg condition as late as September 2015 when he was deposed.

¶ 70    Questions as to the reasonableness of medical expenses and their causal relationship to a work-related injury are questions of fact to be resolved by the Commission, and its resolution of such matters will not be disturbed on review unless against the manifest weight of the evidence. *Max Shepard, Inc. v. Industrial Comm'n*, 348 Ill. App. 3d 893, 903 (2004). Based upon the claimant's medical records and Dr. Rhode's testimony, we conclude that the Commission's award of medical expenses for treatment of the claimant's left leg condition after April 2008 is not against the manifest weight of the evidence.

¶ 71    Air Wisconsin next argues that the Commission's finding of a causal connection between the claimant's current condition of right knee ill-being and his work accident of February 11, 2010, is against the manifest weight of the evidence. Relying on the opinions of Dr. Neal, Air Wisconsin contends that the Commission's finding of a causal connection between the claimant's work accident and his condition of right knee ill-being after December 2010, "is not supported by any credible evidence." Specifically, Air Wisconsin relies on Dr. Neal's opinions that: the claimant

had a pre-existing right knee arthritic condition and that he would have suffered pain from the condition in any case; the claimant suffered from bilateral lymphedema before his work accident and as early as 2007; and the claimant's ongoing swelling, weight gain, and lymphedema are not causally related to his right knee injury.

¶ 72    The claimant argues that the evidence of record supports the Commission's finding of a causal relationship between his condition of right knee ill-being and his work accident of February 11, 2010. We agree with the claimant.

¶ 73    The claimant testified to having slipped on ice as he walked to his car on February 11, 2010, injuring his right knee. The claimant's version of the event was unrebutted. He stated that prior to the accident he had not sought medical treatment for his right knee. Eight days after the accident, the claimant sought medical care at Work Net, complaining of right knee pain and swelling. An MRI of the claimant's right knee ordered by Dr. Rhode revealed a torn meniscus. On September 16, 2010, the claimant underwent a right partial medial meniscectomy performed by Dr. Rhode. Dr. Rhode testified that the torn meniscus that the claimant suffered was the result of his February 11, 2010 work accident. Although the claimant complained of right knee pain when he saw Dr. Rhode on November 7, 2007, Dr. Rhode stated that the symptoms were compensatory in nature as a result of the claimant's left knee surgery. The claimant continued to treat with Dr. Rhode following his right knee surgery. Dr. Rhode's records reflect that the claimant continued to complain of right knee pain and swelling throughout 2010, 2011, 2012, 2013, 2014, and 2015, and he was prescribed pain medication and physical therapy during that period. When deposed in September 2015, Dr. Rhode testified that there was a causal connection between the claimant's condition of right knee ill-being and his work accident of February 11, 2010. According to Dr.

Rhode, the claimant's post-traumatic degenerative changes had exacerbated his weight gain and lymphedema.

¶ 74    As stated earlier, it was the Commission's function to resolve the conflict between Dr. Rhode's causation opinion and Dr. Neal's contrary opinion. The arbitrator adopted Dr. Rhode's causation opinion, and the Commission affirmed and adopted the arbitrator's decision on that issue. We believe that the claimant's testimony and medical records, coupled with Dr. Rhode's opinions, are sufficient to support the Commission's causation finding such that an opposite conclusion is not clearly apparent. We conclude, therefore, that the Commission's finding of a causal connection between the claimant's current condition of right knee ill-being and his employment accident of February 11, 2010, is not against the manifest weight of the evidence.

¶ 75    Air Wisconsin argues that the Commission's award of 343 1/7 weeks of TTD benefits for the period from February 19, 2010, through September 16, 2016, is against the manifest weight of the evidence. It contends that, as a result of his right knee injury, the claimant was only entitled to 46 weeks of TTD benefits for the periods from March 10, 2010, through August 24, 2010, and from September 8, 2010, through February 10, 2011. Its argument in this regard rests, in part, upon its argument that the claimant's current condition of right knee ill-being is not causally related to his work accident of February 11, 2010—an argument that we have already rejected. Air Wisconsin also bases it argument that the Commission's TTD award is against the manifest weight of the evidence on the following: (1) Dr. Cole's opinion that the claimant was capable of sedentary work as of December 20, 2010, and the claimant's rejection of its February 2, 2011 offer of a sedentary position; (2) Dr. Neal's opinion that the claimant had reached MMI for his right knee meniscal tear as of June 14, 2012; and (3) Dr. Rhode's opinion that the claimant's inability to work

is due to his weight gain and lymphedema and Neal's opinion that the claimant's weight gain and lymphedema are not causally related to the right knee injury that the claimant sustained while working. We address each argument in turn.

¶ 76    The claimant injured his right knee on February 11, 2010. On February 19, 2010, the claimant was placed on work restrictions following his examination at Work Net. On February 22, 2010, Dr. Rhode placed the claimant on light duty status; and on March 10, 2010, he took the claimant off of work due to his right leg condition. Dr. Cole opined that the claimant was capable of sedentary work as of December 20, 2010. However, on that same day, Dr. Rhode continued the claimant on off-work status, and he continued the claimant's off-work status through the date of the arbitration hearing. On September 26, 2016, Dr. Rhode found the claimant's condition to be permanent.

¶ 77    An employee is temporarily totally disabled from the time that an injury incapacitates him from work until such time as he is as far recovered or restored as the permanent character of his injury will permit. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118. However, TTD benefits may be suspended or terminated if the injured employee refuses work falling within his physical restrictions. *Sharwarko v. Illinois Workers' Compensation Comm'n*, 2015 IL App (1st) 131733WC, ¶ 47.

¶ 78    Relying upon Dr. Cole's December 20, 2010 opinion as to the claimant's work capability, Air Wisconsin argues that the claimant is not entitled to TTD benefits after his refusal of its February 2, 2011 offer of sedentary employment. However, Dr. Rhode, the claimant's treating physician, maintained him on an off-work status from December 20, 2010, through the date of the arbitration hearing. Whether the claimant was capable of sedentary employment was the subject

of conflicting medical opinions. By awarding the claimant TTD benefits subsequent to his refusal of Air Wisconsin's sedentary employment offer, the Commission obviously found Dr. Rhode's opinion as to the claimant's ability to work persuasive and rejected Dr. Cole's opinion that he was capable of sedentary work. Whether a claimant has refused employment within his work restrictions is a question of fact to be resolved by the Commission, and its determination will not be disturbed on review unless it is against the manifest weight of the evidence. *Otto Baum Company, Inc. v. Illinois Worker's Compensation Comm'n*, 2011 IL App (4th) 100959WC, ¶ 13. Clearly, the Commission determined that the claimant had not refused employment within his work restrictions; and we are unable to conclude, based upon the record before us, that an opposite conclusion is clearly apparent.

¶ 79 Once an injured employee has reached MMI, he is no longer eligible for temporary total disability benefits. *Archer Daniels Midland Co.*, 138 Ill. 2d at 118. Based upon Dr. Neal's opinion that the claimant had reached MMI for his right knee meniscal tear as of June 14, 2012, Air Wisconsin argues that the Commission's award of TTD benefits subsequent to that date is against the manifest weight of the evidence. However, when deposed on September 25, 2015, Dr. Rhode testified that the claimant had not reached MMI as to his right knee injury. In addition, the claimant's medical records reflect that Dr. Rhode continued to treat the claimant for his right knee symptoms throughout 2012 and on an ongoing basis until the arbitration hearing. Whether a claimant has reached MMI is a question of fact for the Commission to resolve, and its decision will not be disturbed unless it is against the manifest weight of the evidence. *Walker v. Industrial Comm'n*, 345 Ill. App. 3d 1084, 1088-89 (2004). By awarding the claimant TTD benefits for the period subsequent to June 14, 2012, the Commission obviously found Dr. Rhode's MMI opinion

more persuasive than Dr. Neal's opinion; and we are unable to conclude, based upon the record before us, that an opposite conclusion is clearly apparent.

¶ 80    According to Air Wisconsin, Dr. Rhode's opinion that the claimant's inability to work is due to his weight gain and lymphedema, coupled with Dr. Neal's opinion that the claimant's weight gain and lymphedema are not causally related to the right knee injury that the claimant sustained while working, establish that the Commission's TTD award for the injury to the claimant's right knee is against the manifest weight of the evidence. Again, we disagree.

¶ 81    Whether a claimant's weight gain and lymphedema are solely attributable to a pre-existing condition was a question of fact to be resolved by the Commission. See *Sisbro*, 207 Ill. 2d at 205-06. The claimant testified that he sought no medical treatment for his right knee condition prior to his work-related accident. Assuming, as Air Wisconsin asserts, that the record reveals that the claimant suffered from lymphedema as early as 2007 and was treating for that condition prior to February 11, 2010, those facts do not necessarily establish that his current condition of right knee ill-being is solely attributable to the pre-existing condition.

¶ 82    An employment accident need not be the sole or principal causative factor of a claimant's condition of ill-being. As long as the employment accident was a causative factor, recovery is available under the Act. *Sisbro*, 207 Ill. 2d at 205. The claimant need only show that some act or phase of the employment was a causative factor in the resulting injury. *O'Fallon School District No. 90 v. Industrial Comm'n*, 313 Ill. App. 3d 413, 417 (2000). The claimant testified that the swelling in his legs began following his work accidents. Dr. Rhode testified that the claimant's consistent complaints of bilateral knee pain were evidence of post-traumatic degenerative changes that exacerbated his weight gain and lymphedema. Dr. Rhode's records of the claimant's July 5,

2010 visit state that the claimant was gaining weight due to "his sedentary activity due to his injury." Dr. Rhode's opinions, if believed by the Commission, are sufficient to support its finding that the claimant's current condition of right knee ill-being is causally related to his employment accident of February 11, 2010, and its resulting award of TTD benefits.

¶ 83     The period of time during which a claimant is temporarily and totally disabled is a question of fact to be determined by the Commission, and its resolution of the issue will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Archer Daniels Midland*, 138 Ill. 2d at 119-20. For the reasons stated, we conclude that the Commission's award of 343 1/7 weeks of TTD benefits to the claimant for the period from February 19, 2010, through September 16, 2016, the date upon which Dr. Rhode found the claimant's condition of right knee ill-being to be permanent, is not against the manifest weight of the evidence.

¶ 84     Next, Air Wisconsin argues that the Commission's award of medical expenses related to the claimant's treatment after February 10, 2011, is against the manifest weight of the evidence. Its argument in this regard rests upon its contention that after February 10, 2011, the claimant's condition of right knee ill-being is not causally related to his work accident of February 11, 2010. In the alternative, it argues that, at minimum, medical expenses should not have been awarded for treatment after June 14, 2012, the date the claimant was found by Dr. Neal to be at MMI for his right knee injury and in need of no further medical treatment. Having rejected both arguments when addressed to the Commission's award of TTD benefits, we reject the arguments as addressed to its award of medical expenses.

¶ 85     Finally, Air Wisconsin argues that the Commission's award of PPD benefits to the claimant for a 35% loss of use of a person as a whole as a result of his right knee injury is against the

manifest weight of the evidence. According to Air Wisconsin, the two meniscal tears suffered by the claimant did not partially incapacitate him from pursuing his usual and customary line of employment as would be required to support a PPD award under section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 2016)). Air Wisconsin's argument in this regard is a restatement of its arguments addressed to the Commission's finding of a causal connection between the claimant's work accident of February 11, 2010, and his current condition of right knee ill-being—arguments we have rejected in our earlier analysis. For the same reasons, we reject those argument addressed to the Commission's PPD award.

¶ 86    The nature and extent of an injured employee's disability is a question of fact to be resolved by the Commission, as is the issue of whether the employee is incapacitated from pursuing his usual and customary employment as the result of an employment related injury. *Sysco Food Services of Chicago v. Illinois Workers' Compensation Commission*, 2017 IL App (1st) 170435WC, ¶ 50. Because of the Commission's expertise, its findings as to the nature and extent of disability should be given substantial deference. *Continental Tire of America, LLC v. Illinois Workers' Compensation Commission*, 2015 IL App (5th) 140445WC, ¶ 20.

¶ 87    Dr. Rhode found the claimant's condition of right leg ill-being to be permanent. Dr. Neal, Air Wisconsin's medical examiner, testified that the claimant could not return to his previous employment as an aircraft mechanic. Consequently, we find that the Commission's determination that the claimant is partially incapacitated from pursuing his usual and customary line of employment as an aircraft mechanic is supported by the evidence of record. Further, there is nothing in the record that would allow this court to disturb the Commission's determination that the injury to the claimant's right knee caused a 35% permanent and partial loss of the person as a

whole. Based upon the record in this case, we conclude that the Commission's award of PPD benefits to the claimant for a 35% loss of use of a person as a whole as a result of his right knee injury is not against the manifest weight of the evidence.

¶ 88    For the reasons stated, we affirm the judgment of the circuit court which confirmed the Commission's decisions.

¶ 89    Affirmed.